LIVAUDAIS *vs.* MUNICIPALLITY NUMBER TWO.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT.

LIVAUDAIS
*vs.*
MUNICIPALITY
NUMBER TWO.

In an action for an immoveable, witnesses may be admitted to prove the general meaning of certain *words* or *phrases* used in the description, but not to show the sense in which the party, against whom the testimony is offered, used them.

No recovery by the original owner can be had if he has divested himself of title by a dedication of the *locus in quo* to a public use, thereby rendering it a *locus publicus, hors du commerce.*

But the designation of a square of ground, for a particular object, by marking or writing on it, in the plan, the word "*colysée*" does not divest the owner of title, or make it a *locus publicus.* It may perhaps create a servitude on this property, by which the adjacent proprietors of lots might require the owner to erect the edifice and dedicate it to the object designated.

This is a petitory action. The plaintiff alleges he is the owner of a square of ground, number 63, on the original plan of faubourg Annunciation, bounded by Camp, Colisium, Robin and Race streets, and which the defendants have taken into possession. He prays to be declared the true and legal owner, and put in possession, with damages for the detention of the same.

The defendants, pleaded the general issue, and admitted possession, but averred they held and possessed by a good and legal title.

Upon these pleadings and issues the case was tried. The evidence showed that the square of ground in controversy was part of the land laid out into lots and squares, in 1807, by the plaintiff as proprietor, called Faubourg Annunciation. This square was numbered 63, and the word "*colysée*" written on it in the original plan.

The plaintiff proved that he had exercised acts of ownership over this property by repeatedly offering it for sale ; and that his original title to it was good. There was no evidence of a sale or transfer to the defendants or any other person, more than the mere designation of the square, in the original plan, as "*colysée.*"

EASTERN DIST.
*December*, 1840.

LIVAUDAIS
*vs.*
MUNICIPALITY
NUMBER TWO.

Pilie, City Surveyor, deposed "that a place upon a plan, which is destined for public use, has some name given to it upon the plan, which shows it to have been so destined, and a name is frequently given to a *place* according to the use for which said place is destined. That his first impression as to the place marked "*colysée*" was a *public place,* but he is now uncertain, as to whether it was such or not. But upon inspection of the plan and reading the prospectus or proces-verbal of sale, he would consider the place marked "*colysée*" as a public place. Wilkinson, also a surveyor, says " the square number 63, on the map or plan before him, was reserved for a Colisium," "that the word "*colysée*" written on the plan meant to designate a place for a public building."

There was a bill of exceptions taken to a question asked Mr. Pilie, on being shown the plan of Faubourg Annunciation : "What, from his knowledge of surveys, he would consider as public places, and what as private property ?" The question and the answer thereto were objected to. 1. The place must speak for itself. 2. The effect of the evidence to be elicited would be to confer title by oral testimony. 3. That the name by which the square in dispute is called admits of no doubt, and requires no peculiar skill to be understood. The evidence was admitted and excepted to.

There was judgment for the plaintiff, decreeing him the land. The defendants appealed.

*Soulé,* for the plaintiff, insisted that he showed a good title to the property in dispute, accompanied with possession, which could not be taken from him by presumptions resulting from any name which it may have pleased the proprietor to place on this property, when he laid it out into town lots.

2. The appellants have shown no title whatsoever, and cannot take away the plaintiff's title by parole testimony.

3. The plan of division, laying the Faubourg out into squares and lots, where if the property in contest makes part, shows nothing which can be construed into a dedication of this square to public use ; on the contrary, this square is marked, lined, numbered and colored in the same manner as all the other property, which was intended as a reserve, and actually was reserved by the appellee.

*Rawle,* attorney for the Municipality contended, that the testimony of the surveyors was properly received to explain the plan, and the various figures and lines upon it. They were men of skill, capable and necessary for this purpose. If there was any ambiguity the evidence was legally received, for without it the plan could not have been understood. Where the *terms* used in an instrument are apparently ambiguous, and yet capable of receiving intrinsically an interpretation, such evidence is admissible. Parole evidence to explain the meaning of words or technical phrases, has always been received in the courts of this state. 2 *Starkie,* 546. *Morgan* vs. *Livingston,* 6 *Martin,* 220.

EASTERN DIST.
December, 1840.

LIVAUDAIS
*vs.*
MUNICIPALITY
NUMBER TWO.

2. The evidence offered by the defendants to prove that Livaudais, the plaintiff, had stated and declared what was to be understood by the word "*Colysée,*" and certain marks and lines upon the plan, was improperly refused by the court: Proof was offered that Livaudais had declared to those who had purchased lots near the ground in question that this square was intended for a public place and for public use. These declarations were explanatory of the plan, and may be considered, in this case, in the same light as the opinions or evidence of witnesses. The square is marked or called "*colysée,*" and without impugning the classical knowledge of buyers of town lots, it may not be erroneous to suppose that some of them did not know what was meant by this word. The course then was to apply to him who had caused the plan to be made and the word to be used. They are told by him, it was intended for a public square which was to be left open and dedicated to the public as a square or building for public use. If the word was unintelligible to many, justice requires that his own interpretation should be received. Evidence of what the surveyor said, who was the agent of the owner, was received. 6 *Peters,* 498.

3. The evidence in the record is sufficient to show that the plaintiff has dedicated to the public the square now claimed by him, and having done so, he has no rightful claim to it any longer. The plan fully exhibits the intention of the grantor, and shows that this square was designated and

EASTERN DIST.
December, 1840.
───────────
LIVAUDAIS
vs.
MUNICIPALITY
NUMBER TWO.

named, as is usual, as a public place ; there are also squares on the same plan designated, the Market square, Annunciation square, Le Prytanée square and the "Colysée." These denote public places.   There is a Prytaneum in Paris, which is not a hall of justice ; a Colisium in London, in which there are no exhibitions of battles of gladiators, or fights with wild beasts : But all these are public places.

4.  The effect of Livaudais' grant to the public, need not be inquired into at this day.   The grantor has passed away his title, and he cannot now retake it, as there is no condition annexed.   6 *Peters*, 433, 498 ; 2 *Idem*, 566.

*Martin, J.,* delivered the opinion of the court.

The defendants are appellants from a judgment in which the plaintiff recovered a square of ground in the city of New-Orleans, in their possession, to which they claim title.   They also pleaded the general issue.

We have not examined the plaintiff's title, because the defendant's have recognized it, by urging a title in themselves under him, and have presented as evidence of it the plan of a Faubourg, laid out into lots, streets, squares and public places, on a plantation formerly belonging to him ; the *locus in quo,* being a square figuring on said plan, on which the word "*colysée*" was written.

The defendant's counsel has called our attention to a bill of exeception which he took to the rejection of parole testimony, offered to prove the interpretation which the plaintiff had given in verbal declarations to the word "*colysée*."   He has relied on the case of *Morgan* vs. *Livingston,* 6 *Martin,* 19, in which this court recognized the regularity of the admission of witnesses to prove the meaning of the words "*frente al rio.*" This is certainly correct when the general meaning of the word is in question ; but not when it is attempted to show in what sense the party, against whom the testimony is offered, had declared he had used the word :   For it would be an attempt to establish, by parole testimony, *that for which* the law requires written proof.

In an action for an immovea-ble, witnesses may be admitted to prove the general meaning of certain *words* or *phrases* used in the description, but not to show the sense in which the party, against whom the testi-mony is offered, used them.

On the merits the defence is, that the plaintiff cannot recover, because he has divested himself of his title to the *locus in quo*, by a dedication of it to a *public use*; thereby rendering it a *locus publicus*, to wit: a piece of land *hors du commerce*.

This is certainly true if such a dedication, as that contended for, has taken place; and whether it has or not, is the only question which the case presents.

The word "Coliseum," is the proper name of an edifice in Rome, originally known as the "Amphitheatre of Titus," the dimensions of which were extended to such a degree that it is said, it was called "*Coliseum*," from its collosal magnitude. *Gibbon's decline and fall of the Roman Empire*; ch. 71, title "*Coliseum of Titus.*" The Roman people met in this place to view the fights of gladiators wild beasts, &c. It was a place of public diversion and amusement. It was originally the private property of the Emperor, and we are without any evidence of the character of that property being changed.

There is no evidence of the alleged dedication, *out* of the plan in this case; and none *in* the plan *out* of the word "coliseum." In this same plan is marked a *locus publicus*, called "*Le place du l'annunciation,*" in the middle of which is a spot, designated as a place for a church. If the plaintiff did not by this designation contract the obligation of building a church, he certainly renounced the right of appropriating it to any other object. The erection of a church by him could not be resisted by any body. He might make it a catholic or protestant church; and when built, he might avail himself of it, by selling or leasing it out. He might employ clergymen, and rent out the pews. There is nothing with us that prevents a public building, designed for public worship, from being private property or from being sold or leased out as such. We have seen a presbyterian church in St. Charles-street, purchased and leased out to the congregation; and we have seen a catholic chapel built on private property, in Delord-street, between Constance and Tchoupitoulas, consecrated by the Bishop, used a while for divine worship, and

*Margin note:*

EASTERN DIST.
*December*, 1840.

LIVAUDAIS
*vs.*
MUNICIPALITY
NUMBER TWO.

No recovery by the original owner can be had if he has divested himself of title by a dedication of the *locus in quo* to a public use, thereby rendering it a *locus publicus, hors du commerce.*

LIVAUDAIS
*vs.*
MUNICIPALITY
NUMBER TWO.

nothing now remains than the "*locus ubi Trojâ fuit,*" now occupied for profane uses.

There is not within this city any place of public worship, that is not the private property of its congregation.

Are places of public amusement of a different character, in this respect, than places of public worship? Had the plaintiff designated on his plan, places for a theatre, a ball-room, a concert hall, or a tennis court, would this designation be construed as a dedication of those places to public use, divest him of his title, and place them *out of commerce?* If it did, what remedy would there be if these places were not applied according to the dedication? Who should be put *in morâ?* and against whom would the process be directed for the purpose of setting the dedication aside? As we have said in regard to the spot designated for a church or "*Le place du l'annunciation,*" the obligation which the plaintiff has contracted by the use of the word "*colliseum,*" might certainly be discharged by the erection of such an edifice. In the meanwhile he may have lost the right of using the square for any other purpose; as to the erection of this edifice, who has put him *in morâ?* If the building is not necessarily to be erected by him, who has offered to erect it? Who has accepted the donation which results from the dedication?

But the designation of a square of ground for a particular object, by marking or writing on it in the plan, the word "*colysée*" does not divest the owner of title or make it a *locus publicus.* It may perhaps create a servitude on this property' by which the adjacent proprietors of lots might require the owner to erect the edifice and dedicate it to the object designated.

The Municipal officers have no right over the property dedicated to public use, more than to watch over it, to prevent its deversion to other uses; to remove incumbrances and all obstacles to the full enjoyment of the public of the property, according to the terms and object of the dedication. The defendants do not pretend that plaintiff has impeded the exercise of that right. They contend that this property is their own; and all their efforts in this case have tended to show that the plaintiff has been divested of his title. The action being a petitory one, this would suffice to prevent a recovery; but as we have said, there was no dedication. Had there been one, it was *inchoate* only, until the acceptance of the party for whose benefit the dedication was intended. Of the acceptance, there is not the least tittle of evidence.

It is not for us now to say whether the purchasers of lots from the plaintiff, in reference to his plan, acquired rights or not on this square. If they did, whether those rights were personal or real, in the nature of a servitude, and whether the lots were the *creditor-estates,* and the square the *debtor-estate* of the servitude. The rights of the purchasers of lots, whatever they may be, cannot be acted on in a suit to which they are not parties, by themselves or their legal representatives. The Municipality is without authority to represent them.

It is, therefore, ordered, adjudged and decreed, that the judgment of the District Court be affirmed, with costs.