J. S. DAVID AND J. F. LIVAUDAIS *v.* MUNICIPALITY NO. TWO.*

A market, though destined to a public use, is not necessarily public property.

A dedication to public use is inchoate only, until after its acceptance, which acceptance may be shown by authentic act or the use of the property in the manner and for the object designated.

The designation for a public purpose of a space of ground upon a plan is not of itself evidence of an intention to dedicate, the essence of the dedication consisting in such case in the assent of the proprietor to the use designated.

APPEAL from the Second District Court of New Orleans, *Lea,* J.

*Geo. Eustis, Jr.,* and *A. Pitot,* for plaintiffs. *R. Hunt, T. R. Wolf* and *J. Livingston,* for defendants and appellants.

BUCHANAN, J. This case is identical in principle with those of *Livaudais* v. *Municipality No. Two,* 16 La. 509 ; *Livaudais & David* v. same, 5 An. 8 ; *Municipality No. Two* v. *Palfrey,* 7 An. ; *A. Xiques et al* v. *Bujac et al.,* 7 An.

For the reasons assigned by the Judge of the lower court, it is ordered, adjudged and decreed, that the judgment appealed from be affirmed, with costs in both courts.

---

### OPINION OF THE DISTRICT JUDGE.

In this case, both parties trace their alleged title to a common source. The plaintiffs and intervenors claim to be declared the owners, and as such to be put in possession of a portion of ground on which the defendants have erected a market, situated at the head of Market Street, between St. James and Richard Streets. The defendants allege that the property claimed by the petitioners belongs to and is vested either in the defendants or in the public, and is under the administration of the defendants. That said property was dedicated to the public, to be used as a market under the regulations of the defendants. By a supplemental petition the plaintiffs ask, that in case the court should be of opinion that the Municipality have the right to hold said property as a market, that they be condemned to pay to petitioners the value thereof, with interest, &c. There is but one point on which this case can be distinguished from those in 5 An., p. 8, and 16 La., p. 509. The piece of ground in controversy was part of the land laid out in lots and squares on an original plan made by *B. Lafon* in 1807. It was marked on the plan with the word " marché " on the space designating the parcel of ground claimed in the petition. In the cases referred to it was held that the words " *Colisée* " and " *Eglise de l'Annonciation* " could not be construed as constituting a dedication to public use, as places of public worship and public amusement are invariably owned as private property, and the question now presented for solution is, whether at the time the plan was made, a market, situated on the spot in controversy, was or was not susceptible of private ownership. This is not the only question presented under the pleadings, but an affirmative decision on this point brings it clearly within the scope and application of the principles laid down in the cases above referred to. There is certainly nothing in the uses to which a market is applied, which is inconsistent with private ownership. It is

---

* This case was omitted in the Reports of 1855.

true, markets are public places, so are theatres and churches. The fact that property is used for purposes of public convenience or necessity does not divest the owner of his title, nor invest it in the public. The public hydrants are the property of a private corporation. The city is lighted by a private company. Until very recently, two of our municipal halls were owned by private individuals. The building in which the courts are held belongs to a private corporation, and it has been recently decided that even the Parish Jail is the exclusive property of the First Municipality, the other two municipalities paying rent therefor as lessees. If a jail, a courthouse, or a municipal hall be susceptible of private ownership, why may not a private individual own a market? If water and light may be supplied to the public by individuals for their private emolument, why may not food also? If I am not mistaken, this is actually done at present. The markets, though owned by the city, are farmed or leased out to individuals. The fact that the word " marché " is figured on the space where the ground in controversy is situated, does not then of itself constitute a dedication, so far as to operate as a divestiture of title. It is not necessarily public property. I do not wish to be understood as laying down the proposition, that a dedication of a piece of ground for any of the uses above mentioned may not be made by an individual, that is not the issue presented. The questions to be determined in this case are, 1st, whether any dedication was made, and 2d, whether a destination to such a use as a market necessarily operates as a divestiture of title. The Civil Code is silent, so far as my examination has extended, on the subject of a transfer of the title to *private property* by dedication, but it is expressly laid down in the old as well as the new Code, that " property can neither be acquired nor *disposed of* gratuitously, unless by donations *inter vivos* or *mortis causa* made *in the forms* established for one or the other of those acts." It is true that *Lafon's* plan is of an earlier date than either of the Codes, but it does not appear that the previous legislation differed in this respect from that adopted by the Codes. Perhaps, however, the validity of a transfer of private property by dedication ought not to be questioned after the well considered decision of the Supreme Court in the case of the *Municipality No. Two* v. *The Orleans Cotton Press,* and that in the case of *Livaudais* v. *Municipality No. Two,* 16 La. The court, in the first case alluded to, appears to have adopted the doctrine of the Supreme Court of the United States as explained in the case of the *City of Cincinnati* v. *White, lessee,* 6 Peter's Rep., that no particular form or ceremony is necessary in the dedication of land to public use, all that was necessary being the assent of the owner of the land and the fact of *its being used for the purposes* intended by the appropriation. Judge Martin, in his dissenting opinion in the case first quoted, says that the dedication required no other evidence than the plan and *the use of those places by the public.* The other Judges, though they differed from Judge Martin on other points, appear to have concurred in this definition of a dedication. It is evident that they regarded it as an agreement, though an implied one. The intention to *dedicate* was to be inferred from the plan designating what was to be used, and the assent given to the actual use of it for the purposes intended. In the case at bar, it may therefore be assumed, that, had the place in controversy been used by the public for the purpose designated therein, without dissent on the part of the original proprietors, this fact, taken in connection with the designation on the plan, would have constituted an effectual barrier to their present claim, but this does not appear to have been the case. On the one part, no attempt was made to use the property in question as

110

DAVID
*v.*
2D MUNICIPALITY.

a market for more than forty years after the alleged dedication, and on the other, this first attempt thus to use it, so far from being assented to by the plaintiffs, was met by a protest which was promptly followed by litigation. Reciprocal assent is of the essence of every agreement. If the object for which the alleged dedication was made had been one which in its very nature excluded the idea of private ownership, as for a quai, port, street or public square, (though the parks in some of our cities are private property,) perhaps such designation might have been considered as evidence of an intention to give, which required no formal acceptance, though the decision in the case of *Livaudais* v. *Municipality No. Two*, 16 La., clearly indicates the opinion of the court, that where there is a dedication, it is inchoate only until the acceptance of the party for whose benefit the dedication was intended, the court probably considered the *use* of the property for the purpose designated as an acceptance.

The conclusions to which my examination of this copious topic has led me are : 1st, that a market, though destined to a public use, is not necessarily public property, and 2d, that a dedication to a public use is inchoate only until after its acceptance, which acceptance may be shown by authentic act, or by the use of it in the manner and for the object designated ; 3d, that the designation for a public purpose of a space of ground upon a plan, is not of itself evidence of an intention to dedicate, the essence of the dedication consisting in such case in the assent of the proprietors to the use designated. I do not consider that the question of servitude is presented by the pleadings. It may be true, as the counsel for the plaintiffs have themselves suggested, that the purchasers of lots in reference to this plan may have acquired rights upon the property in controversy, and that the plaintiffs have renounced the right of appropriating the property for any other purpose than a market ; but those rights, whatever they may be, cannot be acted on in a suit to which they are not parties. Whether a servitude has or has not been established, and if it has, how it is to be enforced ; whether it has been lost by non-usage, misuser or prescription, are questions which cannot be determined in the present litigation, the question of title being the only one presented by the pleadings. The plaintiffs have asked in their amended petition, that the property be recognized as belonging to the petitioners and intervenors in full ownership, in the proportions claimed, with the privilege of using the same as a market for their private benefit and emolument. If they are the owners of the property, they are at liberty to make any use of it which is not in violation of the rights of others, or not in contravention of the municipal ordinances. Should they make any use of it in violation of either, it will be the right of the parties, interested to seek redress by law. At present, I can see no necessity for the interference of the court ; the judgment of the court should, in my opinion, recognize the petitioners as owners of the property claimed, without prejudice to the rights, if any they have, of the defendants, or any parties interested, to demand (after their rights thereto shall have been judicially ascertained) that the said property shall be occupied as a market, in such manner, and subject to such restrictions, as may be hereafter determined.