(106 So. 711)

No. 25450.

## JAENKE v. TAYLOR et al.

(Nov. 30, 1925. Decree Corrected and Rehearing Denied Jan. 4, 1926.)

*(Syllabus by Editorial Staff.)*

**1. Sales ⬡⇒3—Contract held not only promise of sale, but sale, in sense that vendor had right to enforce contract.**

Under Civ. Code, arts. 2456, 2462, contract for sale of business, including building and stock, stock having been inventoried and paid for, *held* to constitute not only a promise of sale, but a sale, in sense that it gave to vendor right to force purchasers to accept title and pay price.

**2. Sales ⬡⇒137—Mortgage on property forms no legal justification for refusing to accept title, where price agreed to be paid is more than sufficient to satisfy mortgage.**

A mortgage on property sold under contract forms no legal justification for refusing to accept title, where price agreed to be paid for property is more than sufficient to satisfy mortgage debt.

**3. Sales ⬡⇒188—Purchasers have right to retain sufficient amount to discharge mortgage on property.**

Purchasers under contract have right to retain out of price agreed to be paid a sufficient amount to discharge mortgage on property purchased.

**4. Dedication ⬡⇒31, 35(1), 37—Dedication for public use is inchoate only until after its acceptance; acceptance may be shown by authentic act or use of property.**

A dedication for public use is inchoate only until after its acceptance, which acceptance may be shown by authentic act or use of property in manner and for object designated.

**5. Dedication ⬡⇒19(5)—Owner of land held to have irrevocably dedicated streets to public upon laying out town in lots and streets in accordance with plan.**

Where owner of land laid out town into lots and streets and sold lots in accordance with his plan and map, without any reservation or restriction indicating intention to retain ownership of land, covered by streets, he irrevocably dedicated streets to public and divested himself of fee as completely as if he had made a direct sale or donation of streets to public, in view of Civ. Code, art. 458.

**6. Dedication ⬡⇒65—Land to center of street abandoned reverts to abutting owner.**

Under Act No. 151 of 1910, authorizing municipalities to revoke and set aside dedication of streets, and section 2 of said act, that ownership of soil embraced in such street shall revert to the then owner of land contiguous thereto when town by proper resolution abandoned street, land to center of street in front of lot became vested in the then owner.

**7. Sales ⬡⇒360(1) — Vendor held entitled to judgment for entire amount against purchasers who failed to complete agreement.**

Where contract was entered into, whereby vendor agreed to sell business to defendants, who were to organize corporation and to make partial payment before November 1, balance to be evidenced by notes, vendor, after due dates of all payments had passed without payment, was entitled to judgment for total amount, with interest.

**8. Interest ⬡⇒34—Evidence held sufficient to take case out of rule requiring written evidence to prove agreement to pay greater interest than legal rate.**

Where vendor had contracted to sell business to purchasers, settlement to be November 1, and purchasers had failed to make settlement, but in December had paid interest on payment due at rate of 8 per cent., and later executed deed and notes stipulating such rate, which however, were never accepted, *held*, that this was sufficient to take case out of rule which requires written evidence to prove an agreement to pay greater interest than legal rate.

**9. Vendor and purchaser ⬡⇒59 — Sales; joint purchasers of land cannot be held liable in solido for purchase price unless expressly so stipulated.**

Joint purchasers of land cannot be held liable in solido for the purchase price, unless expressly so stipulated and agreed by them.

On Application to Correct Decree, and, in Alternative, for Rehearing.

**10. Appeal and error ⬡⇒832(1)—Oversight or error, patent on face of record, may be corrected without granting rehearing.**

Oversight or error, patent on face of record, may be corrected without granting rehearing.

**11. Vendor and purchaser** ⊚⟹**59—Sales; several purchasers are presumed to have acquired in equal proportion, and are only bound each for his share of the price.**

Where several parties purchase without specifying the interest of each, they are presumed to have acquired in equal proportion, and are only bound each for his share of the price.

Appeal from Fifteenth Judicial District Court, Parish of Jefferson Davis; Jerry Cline and Thomas F. Porter, Jr., Judges.

Suit by William D. Jaenke against C. N. Taylor and others. From a judgment for plaintiff, the defendants appeal. Judgment modified and affirmed.

Modisette & Adams, of Jennings, for appellants.

McCoy & Moss, of Lake Charles, for appellee.

THOMPSON, J. The purpose of this suit is to compel the seven defendants to organize a corporation with not less than $20,000 paid-up capital stock, and to accept title to certain real estate situated in the town of Jennings, all in accordance with a written agreement entered into between the parties. In the alternative, should the said parties refuse to organize said corporation, then judgment is prayed for against the seven parties in solido for the sum of $10,000, the purchase price of said property.

The agreement was entered into on August 16, 1920, under the terms of which the plaintiff agreed to sell to the Farmers' Union Company, and the defendants agreed to buy for said company, the business known as the W. D. Jaenke Grain Company, located in said town of Jennings.

The price for the real estate and improvements was fixed at $10,000, of which amount $3,500 was to be paid on or before November 1, 1920. The balance was to be paid in notes of $1,500 each, maturing January 1st annually thereafter.

The land was not specifically mentioned or described in the agreement, but it is conceded that the term, "business known as W. D. Jaenke Grain Company," included the land.

In addition to the above price for the real estate, the purchaser was to pay for the stock of goods and merchandise on hand at the invoice price according to an inventory to be thereafter taken.

The seven defendants took immediate possession of the business including the real estate, and caused an inventory to be made of the stock of goods and paid for the same at the invoice price in accordance with the terms of the agreement.

Thereafter, on August 30, 1920, the defendants incorporated under the name of the Farmers' Union Company, Inc., with a capital stock of $10,000 divided into 200 shares of $50 each. The defendants subscribed for 100 shares of said stock, but only paid $600 into the corporation. For the balance of the stock subscribed for, the defendants gave their respective notes to the corporation. The evidence does not show whether these notes have been paid or are still due and held by the corporation.

No part of the $10,000 for the land was ever paid, and no formal deed was ever executed. The corporation, on December 7, 1920, paid the plaintiff interest on the $3,-500, which was the first payment, and which was due on or before November 1, 1920. This interest was at 8 per cent. per annum, and covered a period from August 16, 1920, to date of payment.

The last clause of the contract between the parties provides:

"This agreement is made for the purpose of binding the said parties pending the execution of the proper papers, and is hereby considered binding pending the execution of the said papers."

It is this clause that is made the basis of the first defense urged against the action,

and from which it is contended: That the agreement was a mere memorandum, inchoate and incomplete, and left something for future agreement to be embodied in the contract of sale.

That it was not such a contract as could be legally enforced, and left the parties at liberty to withdraw therefrom at their pleasure and will.

The contention is not well taken. The contract evidenced a perfect and complete agreement on the part of plaintiff to sell, and, on the part of the defendants, to buy for the Farmers' Union Company, the property referred to.

There was a meeting of minds—a complete mutuality of understanding as to the thing and the price. The terms of payment were definitely fixed, and the property was delivered into the actual possession of the defendants, who assumed exclusive dominion over the real estate, and executed the other part of the agreement by paying for the stock of goods and disposing of it as their own property. There was nothing left to be done by either party to the contract except to execute the "proper papers," which unquestionably meant the preparation of the charter and the organization of the corporation which the defendants had in contemplation and the execution of a formal deed.

[1] We need go no further than the articles of the Code to sustain the proposition that the contract of the parties in the instant case, put into execution as it was, wholly as to the stock of goods, and partially as to the land, by taking possession thereof, constituted, not only a promise of sale, but a sale, in the sense that it gave to the plaintiff the right to force the defendants to accept title and to pay the price.

"The sale is considered to be perfect between the parties, and the property is of right acquired to the purchaser with regard to the seller, as soon as there exists an agreement for the object and for the price thereof, although the object has not yet been delivered, nor the price paid." C. C. art. 2456.

"When there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables is in writing, so far amounts to a sale as to give either party the right to enforce specific performance of same." C. C. art. 2462.

These articles of the Code have been the subject of frequent interpretation and application by this court. We shall content ourselves by referring to only two of the later cases.

In Lehman v. Rice, 118 La. 975, 43 So. 639, it was said:

"A promise of sale amounts to a sale in the sense that it gives the purchaser the right to demand a specific performance of the obligation to transfer and deliver the property. Where the conditions have been performed, the legal title passes as of date of the original agreement."

And in Sheridan v. Reese, 122 La. 1033, 48 So. 445, it was said:

"The contract transferred was a complete promise to sell. It was a strong and positive promise to sell. The property had been delivered to the promisee, and it remained for him to operate the mill under its terms and conditions. There was a complete agreement; object and price were clearly stated, and the defendant, as well as his predecessor, from all appearances endeavored to earn the price in accordance with the agreement.

"It fell squarely within the terms of article 2462 of the Civil Code relating to a promise to sell. The promise to sell had been clearly given by the plaintiff, and had been clearly accepted by the defendant's predecessor in right."

The authorities cited by defendants' counsel are wholly inapplicable to such an agreement as here under consideration.

Of course, where the parties have not fully agreed upon all of the terms of their contract and something is left for future determination or agreement, or where it is agreed that the contract shall be reduced to writing at some future date, neither party is bound, and may withdraw therefrom until all the

terms are agreed on or the contract is reduced to writing and executed as contemplated that it should be.

We have no such contract here as was under consideration in the cases cited by defendants.

As we have observed, the parties agreed on the thing and the price; the terms of payment were fixed and delivery made of the property. The contract was carried into execution in all respects by all parties except the signing of the deed and the payment of the price.

If this contract is not subject to compelling specific performance, then we are unable to conceive of a written promise of sale that would fall within the meaning of the codal provision hereinbefore quoted.

The second defense urged against the action is that the property was incumbered by a conventional mortgage, and that the title is defective, in that a part of the property forms a part of one of the streets of the town of Jennings.

[2] As to the incumbrance, it is well settled that a mortgage on the property forms no legal justification for refusing to accept title where the price agreed to be paid for the property is more than sufficient to satisfy the mortgage debt. Grimshaw v. Hart, 6 Rob. (La.) 265; Kinberger v. Drouet, 149 La. 999, 90 So. 367; Murphy v. Hussey, 117 La. 390, 41 So. 692.

[3] It is shown that the amount of the mortgage on the property in question is less than the price which defendants agreed to pay for the property. The purchasers will therefore have the right to retain out of the price a sufficient amount to discharge the mortgage.

The principal part of the real estate covered by the agreement is situated in Cutting subdivision of the town of Jennings, and borders on Cutting avenue. The main improvements, we understand, are on these lots.

The other lots border on Orange street, and a small warehouse is on the street.

The plaintiff claims that his lot extends to the center of Orange street, whereas it is contended by the defendants that the fee to this small portion of the lot which is in the street was never conveyed by the original owner, and reverted to his heirs when the town abandoned the use of the street.

The town of Jennings was platted into lots and streets by one McFarlain about the year 1884. One of the streets designated on the map of said town was known as Orange street. McFarlain was the owner of the land on which said town was laid out, and he thereafter sold the lots bordering on said Orange street, one of which lots, the one here in question, passed by successive titles to the plaintiff.

The town of Jennings was incorporated in 1888, and the said streets, as laid out by McFarlain, were used as public streets of said town until the year 1913, when the town decided to abandon Orange street, as its use was no longer necessary for the public.

There is no doubt that, where an owner of land lays out a town, making and recording a plat of his property, subdividing it into lots, squares, and streets, and thereafter sells the lots to the public on the basis of said plat, and the town accepts by opening up and using the streets thus laid out, the act of the owner becomes an immediate and irrevocable dedication of such streets to the public.

In the case of Flournoy v. Breard, 116 La. 230, 40 So. 686, the court said:

"Moreover, it has been repeatedly decided that an owner who sells property bounded by his own land which he refers to as a public street is bound by that declaration. It has been often held that by thus establishing a boundary it is an evidence of his intention to dedicate the street to public use.

"Here there can be no question upon the subject for the plat fully sets forth the streets. This plat contains no ambiguity; shows no intention of retaining the ownership over the

streets, while selling the adjacent properties to the street."

And in Town of Vinton v. Lyons, 131 La. 674, 60 So. 54, it was again said:

"The recording of a plat with a vacant block marked 'park,' and the sale of lots according to the plat, is an irrevocable dedication of the park to the public use."

[4] The author to the above opinion quotes from Archer v. Salinas City, 93 Cal. 43, 28 P. 839, 16 L. R. A. 145, as follows:

"The same principles which are applicable to the dedication of a public street apply to the dedication of a public park or square."

"A dedication to public use is inchoate only, until after its acceptance, which acceptance may be shown by authentic act or the use of the property in manner and for the object designated." David & Livaudais v. Municipality, 14 La. Ann. 872.

"No recovery by the original owner can be had if he has divested himself of title by a dedication of the locus in quo to a public use, thereby rendering it a locus publicus, hors de commerce." Livaudais v. Municipality, 16 La. 509.

The Civil Code, article 458, under the title of "Things," declares that things which belong in common to the inhabitants of cities and other places are of two kinds:

"Common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common; such as the streets, the public walks, the quays.

"And common property which, though it belongs to the corporation, is not for the common use of all the inhabitants of the place, but may be employed for their advantage by the administrators of its revenues."

[5] From all of which we conclude that when McFarlain, the owner of the land, laid out the town of Jennings into lots and streets and sold the lots in accordance with his plan and map, without any reservation or restriction indicating an intention to retain the ownership of the land covered by the streets, he thereby irrevocably dedicated the said streets to the public and divested himself of the fee as completely as if he had made a direct sale or donation of the said streets to the public.

This has been the construction placed upon such acts of dedication by the Legislature of this state.

Act 151 of 1910 authorizes municipalities, in their discretion, to revoke and set aside the dedication of streets which had theretofore been laid out and dedicated to public use when said streets have been abandoned or are no longer needed for public purposes.

Section 2 of the said act provides:

"That upon such revocation, the ownership of the soil embraced in such roads, streets, and alleyways up to the center line thereof shall revert to the then present owners of the land contiguous thereto."

[6] When the town of Jennings, by proper resolution, abandoned Orange street, the title to the land to the center of said street in front of the lot here in question became vested in the then owner, J. R. Mouton, who later conveyed the same to the plaintiff.

It is admitted that the defendants contemplated organizing a corporation when they entered into the contract with the plaintiff. But it is a disputed question as to whether they agreed with the plaintiff to effect such an organization, and as to what the amount of capital stock should be. The evidence is woefully conflicting as to the amount of capital stock; and we shall not undertake to reconcile the conflict.

It is sufficient to say that the defendants bound themselves to make the purchase and to accept the title in the name of a corporation not then in existence. The corporation which they did organize, and of which they are stockholders, is not a party to this suit, and the court has no authority to order that or any other corporation to accept title. The defendants assumed that duty and have not discharged it. They should be held to do so.

[7] All of the price agreed to be paid is long since due, and the plaintiff has asked

that the judgment be amended so as to require that the price be paid in cash, plus interest. The plaintiff is entitled to the relief sought in this respect.

[8] The contract made no mention of interest on the installments of the price, but the lower court allowed interest at the rate of 8 per cent. per annum, and we think this was correct. The defendants paid interest at that rate up to December 7, 1920, and later they executed a deed and notes, in which they agreed to pay 8 per cent. interest, though the deed and notes were never accepted for reasons unnecessary to mention here. We think this sufficient to take the case out of the rule which requires written evidence to prove an agreement to pay a greater interest than the legal rate.

The defendants were held bound in solido for the purchase price. This was an error.

At common law and in some jurisdictions it appears that promoters of a corporation are held liable in solido for debts contracted in the name of and for the benefit of the proposed corporation.

That rule, however, does not prevail and has never been recognized and applied in this state, and could not be applied under the facts of this case.

[9] The defendants are held as purchasers, because they pretended to represent an unchartered corporation, and because they have not completed the purchase for such a corporation; and it is a settled principle that joint purchasers of land cannot be held liable in solido for the purchase price unless expressly so stipulated and agreed by them. Heirs of Burney v. Ludeling, 47 La. Ann. 96, 16 So. 507.

It will be necessary to recast the judgment which was rendered in plaintiff's favor by the lower court.

For the reasons assigned, it is ordered and decreed that the defendants do complete the purchase and accept the title to the property described in the petition, should the same be tendered to them by the plaintiff within 30 days after this judgment shall become final, and that the said defendants pay to the plaintiff as the price of said property $10,000 cash, with interest at the rate of 8 per cent. per annum from December 7, 1920, till date of payment, reserving to the said defendants the right to retain sufficient of the price to discharge the incumbrances on the property in the case the plaintiff had not done so.

In case the defendants shall fail or refuse to accept the title tendered, then this judgment shall constitute the title to said land, and the plaintiff shall have judgment against the seven defendants each for one-seventh of the said $10,000, with interest at 8 per cent. per annum from December 7, 1920, till paid, with a vendor's privilege on the property described in the petition.

It is further ordered that the defendants pay all costs of this suit.

## On Application to Correct Decree, and, in Alternative, for Rehearing.

PER CURIAM. The plaintiff moves to correct the decree handed down in this case in two particulars: First, as to the date from which interest is allowed on one of the installments of the price; and, second, that part which provides that in case the defendants shall fail or refuse to accept the title tendered then the judgment shall constitute the title and the plaintiff shall have judgment against the seven defendants for one-seventh each of the purchase price.

[10] (1) We were mistaken in assuming that the defendants had paid interest on all of the price up to December 7, 1920. As a matter of fact, interest was only paid on $3,500 up to that date. It follows that plaintiff should have interest on $6,500 from August 16, 1920. As this was an oversight or an error patent on the face of the record, the

same may be corrected without granting a rehearing.

(2) In directing that the judgment should stand as the title in case the defendants refused to accept title, we simply followed judicial precedent, which is so well established that we did not feel called upon to cite authority.

However, we will refer to and quote from Kinberger v. Drouet, 149 La. 999, 90 So. 372:

"If the plaintiff has the right to the title, it will be so decreed, and defendant Mrs. Drouet will be condemned to sign the deed. If she refuses to sign, then the decree will be the title." See authorities therein cited.

[11] The rule is equally well settled that, where several parties purchase without specifying the interest of each, they are presumed to have acquired in equal proportions, and are only bound each for his share of the price. The defendants here are held as such purchasers.

They are not bound as promoters of a corporation nor as in the nature of tort-feasors.

It is therefore ordered that the decree heretofore rendered be amended by allowing 8 per cent. per annum interest on $6,500 from August 16, 1920, till paid, and a like rate of interest on $3,500 from December 7, 1920, till paid.

With this amendment and correction of the decree, the rehearing is refused.