CARAWAY, J.,
concurring.
| ,This legal conundrum of the extent of the public’s ownership from a dedication of “land” for “the public use for a public road” is not aided by the somewhat offhand, yet most pertinent, observation of Civil Code Article 457. “The public may own the land on which the road is built or merely have the right to use it.” La. C.C. art. 457. That indecisive codal observation, however, does clearly reveal that the only “public thing”[1] in this case is the use or usus right of the ownership of the land as a road. The inalienable character of the public thing involved in this dispute is the public use of the property as a road. In contrast, the additional and non-conflicting use of the property for mineral development will be encumbered by lease and partially alienated as a “private thing”[2] by Caddo Parish (hereinafter “Caddo”) in its private capacity if the trial court’s verdicts are affirmed. There is no question that the “public thing” component of Caddo’s ownership was acquired and remains secure. The “private thing” corn- *773 ponent of its asserted ownership of these road lands is at the heart of this dispute.
The parties’ thorough briefs and their counsel have informed us that the Louisiana Supreme Court has never ruled on the central issue of this case for any dedication grant for a public road using a specific written contract with the basic and brief language of dedication used in the Caddo 12road form (hereinafter the “Dedication Form”). Indeed, there are no cases where the Supreme Court has addressed this question of the extent of ownership conveyed when a party merely “dedicates land” to a public body “for a public road” in a written grant without any stated monetary payment by the public body.[3] Likewise, I find no cases where the Supreme Court has addressed whether the lack of an authentic act for the dedication or the lack of a written acceptance by the public body might prevent or limit the force of such private, unilateral act of dedication.
Importantly, the high court has ruled on the extent of the public’s ownership in two other public road settings. The leading case addressing a dedication by use of a subdivision plat, under what is now La. R.S. 83:5051, held that the public body acquired the entire ownership or “fee” interest. Arkansas-Louisiana Gas Co. v. Parker Oil Co., 190 La. 957, 183 So. 229 (1938). On the other hand, for a public road arising from a so-called “tacit” dedication pursuant to La. R.S. 48:491, the Supreme Court ruled that the public body only acquires a servitude for public road use. Goree v. Midstates Oil Corp., 205 La. 988, 18 So.2d 591 (1944). Thus, in keeping with the codal indifference of Article 457 for the extent of the public ownership of a road, the jurisprudential rulings for plat dedication and tacit dedication reached inconsistent conclusions. Without specific statutory guidance in our law and with the public road use always intact under either result, inconsistent interpretations for the present Dedication Form remain leviable for either Caddo’s ownership of a servitude or the “fee.” Indeed, this panel’s views so demonstrate.
Accordingly, without any statutory rule and with differing jurisprudential assessments of the public’s ownership in other road settings, the Louisiana Supreme Court’s last statement on the subject in St. Charles Parish School Bd. v. P & L Investment Corp., 95-2571 (La.5/21/96), 674 So.2d 218, argued now by the parties, is merely dicta. The case did not address a formal written act of dedication. Citing Professor Yiannopoulos [A.N. Yiannopoulos, Property § 95, in 2 Louisiana Civil Law Treatise (3d ed.1991) ], the court’s general recitation of the law for road dedications stated:
A formal dedication transfers ownership of the property to the public unless it is expressly or impliedly retained. Yian-nopoulos, Property § 95, at 208-209. If the landowner retains ownership of the property, the public acquires a servitude of public use.
St. Charles Parish School Bd., supra at 221. Nevertheless, from the implications in rulings of the court concerning plat dedications and from the Legislature’s early use of the term “dedication” in legislation predating the first Caddo grant in this case, I find that the best legal analysis of this res nova question supports the above *774 expression of the law given in St. Charles Parish School Bd.
The earliest use of the term “dedication” by the Legislature apparently occurred in Act 134 of 1896 (the “1896 Act”). The 1896 Act is the source statute for La. R.S. 33:5051 for public road dedications involving the use of a plat for the sale of subdivided lots. The subdivider was charged under the 1896 statute to record in the conveyance records a plat or map Lcontaining on its face “[a] formal dedication made by the owner ... of all the streets, alleys and public squares or plats shown on the map to public use.” In the Civil Code of 1870, “dedication” was not a category of conveyance, such as “sales” or “donations,” by which one might divest himself of ownership. The legislature apparently borrowed the term from prior jurisprudence and the common law and made it clear that such “dedication” was a special category of conveyance “to public use.” The 1896 Act did not address the extent of the ownership interest acquired by the public body, and the plat dedication provisions as presently contained in La. R.S. 33:5051 likewise do not specify the extent of the public’s ownership. The question was thus left for judicial interpretation of both the statute itself and the subdivider’s juridical acts in executing the “formal dedication” and recording the plat.
The next use of the term “dedication” in legislation occurred in 1910 with Act 151 (the “1910 Act”). The 1910 Act is the source statute for La. R.S. 48:701, entitled “Revocation of Dedication.” Because of the present dispute concerning Caddo’s 1983 resolution for its roads acquired under the Dedication Form, all parties have addressed this statute as applicable to the asserted revocation for the roads in question, with Caddo and the other appellees taking the position that no formal revocation was accomplished by the 1983 resolution as discussed below. Thus, while the 1910 Act unquestionably has application to a plat dedication or “formal dedication” effected pursuant to the 1896 Act, the parties also agree that the scope of the 1 r,dedications addressed in the 1910 Act (La. R.S. 48:701) is also broadly applicable to a formal written act of dedication.
The 1910 Act provides to police juries the power to “set aside the dedications of all roads” previously “dedicated to public use” when such roads “are no longer needed for public purposes.” Most significantly, the Legislature arguably gave substantive insight into the force and effect of Louisiana “dedications” when it added the following provision in the 1910 Act:
That upon such revocation, the ownership of the soil embraced in such roads, streets, and alley-ways up to the center line thereof shall revert to the then present owners of the land contiguous thereto.
Therefore, following a period of public use of a dedicated road, which may be a lengthy period of time, the statute recognizes that the adjacent “owners” of land on either side of the dedicated road may no longer be the owner who originally dedicated the roadbed. Nevertheless, the 1910 Act does not return the ownership of the dedicated roadbed upon revocation to the original owner nor provide that such owner’s servient interest is freed from a public servitude. Instead, the Legislature chose to convey by operation of law the ownership of the dedicated roadbed after revocation to the then “present owners” of the contiguous lands.
Admittedly, the 1910 Act is far from comprehensive legislation providing a framework for a regime of “dedication” of public roads. However, any “dedication” contract voluntarily executed by a private owner to the public after the 1910 Act should have taken into account the strong *775 implication of that legislation. The quoted provision rests on the premise |fithat if the owner uses as his expression for a land conveyance the specific verb “dedicate,” as opposed to “sell” or “donate,” his ownership of the land may be completely conveyed to a public body, allowing for the statutory transfer to other owners in the future upon revocation.
This legislative implication from the 1910 Act was actually noted by the Supreme Court in Jaenke v. Taylor, 160 La. 109, 106 So. 711 (1925) in support of its determination of a municipality’s ownership of a street created by a town plat dedication. In 1913, the Town of Jennings had abandoned and revoked its rights to the street pursuant to the 1910 Act. Thereafter, at the time of suit, a dispute existed over the ownership of a small warehouse built out to the center of the street by the plaintiff who was the owner of an adjacent lot on one side of the former street. The defendant asserted that the abandoned street remained owned after the revocation by the original subdivider, McFarlain (or his heirs), who had platted the town lots and streets in 1884. Prior to the 1896 Act, the jurisprudence interpreting such plat dedications had indicated, without any statutory guidance, that the original subdivider/owner conveyed complete ownership to the public body. Livaudais v. Municipality No. 2, 16 La. 509, 1840 WL 1413 (1840); The Town of Carrollton v. Jones, 7 La.Ann. 233, 1852 WL 3598 (1852); Torres v. Falgoust, 37 La. Ann. 497, 1885 WL 6096 (1885). That rule was reaffirmed in Jaenke with the court utilizing the implication of the 1910 Act as additional legislative support of its “fee” determination, as follows:
From all of which we conclude that when McFarlain, the owner of the land, laid out the town of Jennings into lots and streets and sold the lots in accordance with his plan and map, without any reservation or restriction indicating an intention to retain the ownership of the land ^covered by the streets, he thereby irrevocably dedicated the said streets to the public and divested himself of the fee as completely as if he had made a direct sale or donation of the said streets to the public.
This has been the construction placed upon such acts of dedication by the Legislature of this state.
Act 151 of 1910 authorizes municipalities, in their discretion, to revoke and set aside the dedication of streets which had theretofore been laid out and dedicated to public use when said streets have been abandoned or are no longer needed for public purposes.
Section 2 of the said act provides:
That upon such revocation, the ownership of the soil embraced in such roads, streets, and alleyways up to the center line thereof shall revert to the then present owners of the land contiguous thereto.
Id., 160 La. at 117-118, 106 So. 711. According to Jaenke, with the 1910 Act, the Legislature construed acts of road dedication as placing full ownership in the public, allowing that ownership to be transferred to other parties upon revocation of such dedicated roads. Since the 1910 Act has always been broad enough in its language to apply to plat dedications and formal written acts of dedication alike, the Legislature’s implication or construction may also be applied to the landowner’s voluntary act manifested by the language of Caddo’s Dedication Form.
The analogous situation for the complete transfer of ownership by a plat dedication pursuant to La. R.S. 33:3051 also involves a deliberate judicial act by the owner of the land. Arkansas-Louisiana Gas Co., supra. On the other hand, the Supreme *776 Court’s ruling in Goree, supra, determined that a tacit dedication of a road arising from the landowner’s mere acquiescence to the public maintenance and use of a road is distinguished from formal dedications and conveys only a servitude. The court said:
| sThere is a vast difference between a tacit dedication and a statutory dedication of property for public use. A tacit dedication is one which arises from silence, inactivity — one arising without express contract or agreement. A statutory dedication involves some deliberate, affirmative, active step taken in compliance with a statute by the landowner indicating a purpose and intent to dedicate.
Goree, supra, 205 La. at 1002-1003, 18 So.2d 591. The Goree court therefore distinguished its earlier ruling in Arkansas-Louisiana Gas Co. and justified its inconsistent choice for the ownership of tacitly dedicated roads as servitudes on the following conclusion:
In that case [Arkansas-Louisiana Gas Co.] there was a formal, intentional dedication, by the owner of the land, of the streets to the public. In the case at bar there was no formal, intentional dedication ....
Id. at 1007, 18 So.2d 591.
When we compare the Dedication Form to the requisite written statement for “formal dedication” pursuant to the plat dedication of the 1896 Act (now La. R.S. 33:5051), there is much similarity. The “formal dedication” statement on the plat need not be executed as an authentic act, even though the land is conveyed without payment as a virtual donation by the landowner. The “formal dedication” of the plat is unilateral as the statute does not require the signature of a public official expressing the public body’s formal acceptance. The plat itself is nothing more than a visual rendering of a metes and bounds description of the street dimensions. Therefore, this unilateral written act with a property description and the landowner’s expression of an intent for “formal dedication” of a road or street “to public use” was the Legislature’s first definition in our law for public “dedication.”
| qLikewise, the Dedication Form in question is a formal “deliberate,” “active step” made as a unilateral act under private signature by each prior landowner of these Caddo roads. The form is a simple, two-sentence document with space for insertion of the metes and bounds description of the road in between the two sentences. No payment by Caddo is stated, and Caddo is not a signatory party.
Accordingly, we might summarize these two formal modes of dedication as follows: The landowner’s formal dedication expressed on a plat is a conveyance to the public use for a public road given force and effect by a statute which does not otherwise inform us of the extent of the ownership received by the public. The landowner’s formal dedication under the Caddo Dedication Form is a conveyance to the public use for a public road with contractual force and effect independent of any statute, yet still without clear expression of the extent of the ownership received by the public.
With this comparison, the Jaenke decision and the Supreme Court’s analogous ruling in Arkansas-Louisiana Gas Co., as summarized in Goree, quoted above, would require me to hold that the landowners will be deemed to have made a formal, intentional “dedication” that, on the face of the instrument alone, placed complete ownership in Caddo. Yet, such ruling would be far from definitive until such time that our highest court specifically rules. Overall, the rulings for Louisiana roads are inconsistent and the Legislature has given no directive requiring fee owner *777 ship in the public, as “the public may own [either] the road ... or merely have the right | mto use it.” La. C.C. art. 457. Nevertheless, this difficult issue may be pre-termitted in this case because of the special facts surrounding the action taken by Caddo in 1988.
With this open question under Louisiana law, Caddo passed the following resolution in 1983 (hereafter the “Resolution”):
WHEREAS, in the past Caddo Parish has obtained dedications for public roads without purchasing the rights-of-way thereto, by the use of dedication instrument forms including the statement that the property dedicated was to be used for public road purposes only, and
WHEREAS, dedications using such forms have been a source of confusion and dispute as to the fee ownership of the property involved and the mineral rights attributable thereto, and
WHEREAS, the Caddo Parish Police Jury believes the resolution of this problem and the action hereinafter taken to be in the best interest of the citizens of Caddo Parish.
NOW, THEREFORE, the Caddo Parish Police Jury meeting in regular session this 20th day of April, 1983, does hereby resolve that all dedications of public road rights-of-way in Caddo Parish where the dedication instruments contained statements that the property was to be used for public road purposes only and where the instruments cited no financial consideration in favor of the grantors, shall be henceforth considered by Caddo Parish only to constitute grants to the public of servitudes and rights-of-way for the placement of public roads, for the placement or granting of rights of placement of pipelines, cables and utilities, and for other uses normally associated with public road rights-of-way, and Caddo parish does hereby waive all present and future claims to fee title and to mineral rights relating to the property described in such instruments. However, this waiver shall in no way affect the Parish’s claims to funds previously received as a result of mineral speculation or production upon such properties, nor shall in no way affect the Parish’s claims to funds previously received as a result of mineral speculation or production upon such properties, nor shall this waiver apply to rights-of-way purchased by the Parish or to statutory dedications.
This Resolution was immediately recorded in the conveyance records of Caddo Parish on April 25,1983.
|nThe, phrase “dedication instrument forms” is unquestionably a reference to the same Dedication Form used in the multiple transactions from 1913-1928 in these consolidated cases. In answers to interrogatories, Caddo also stated that to the best of its knowledge “all roadways acquired by the Parish during the 20th century were acquired on the same form as the dedications herein.” The phrase “for public road purposes only” is highlighted in the Resolution and is the actual language of the Dedication Form. In the legal vacuum for written dedications, Cad-do correctly recognized that the Dedication Form was a “source of confusion” in 1983 as it remains today.
Despite the “confusion,” Caddo has presented no evidence that prior to 1983, it had ever acted to lease for mineral exploration any of these road properties dedicated by its use of the Dedication Form. To the contrary, there was evidence of an earlier 1957 resolution involving one specific road dedication from 1925 on the Lawton family land. In the opinion of an assistant district attorney for Caddo, as noted in the minutes for the 1957 resolution, the Lawton dedication deed provided *778 Caddo “only a servitude for road purposes and did not [provide] any interest in the mineral rights on the property.” The Lawton resolution therefore declared that Caddo made “no claim to the ownership of the mineral rights.”
The parties now debate the meaning and authority of the Resolution. The argument centers around the road revocation statute, La. R.S. 48:701, the present version of the 1910 Act discussed above. I do not find that this revocation statute is a relevant measure of the authority for Cad-do’s 1983112action. First, the statute operates upon a finding by the public body that the road use has been abandoned or is no longer needed for public purposes. Only upon those findings may the public’s road use end or, more precisely, may the “public thing” held in the public trust become alienable by the operation of the statute itself. That has never occurred in this case as the public use of these roads has been constant, and Caddo made no showing in 1988 of the end of the public’s need for these roads. Second, the revocation statute operates on the premise that the public is vested with the entire ownership of the land comprising the roadway as discussed above. Yet, for the simple, non-authentic, unilateral act of dedication now at issue, the jurisprudence of our highest court has never addressed whether Caddo became vested with the entire ownership of the land or merely the right to use it. This open legal issue is itself a unique type of ambiguity arising from the lack of any Civil Code framework governing “dedications.” Also, the form language itself may ambiguously limit the “land” (fee) grant to “public road purposes only” (servitude). With that ambiguity, Caddo did not clearly divest itself of any ownership by its Resolution in 1983. Therefore, the circumstances for the public body’s use of the revocation statute did not exist in 1983, and La. R.S. 48:701 was not the relevant authority for or limitation upon Caddo’s Resolution.
Since Caddo’s action in 1983 was not a revocation of the roads and the roads remained secure as public things, a review of Caddo’s power to act and contract for the management of its property in its private capacity must be considered. At the time Caddo was contracting for these road | ^grants, the Louisiana Supreme Court had occasion to discuss the powers of police juries in American Ice Co. v. Police Jury, Parish of Jefferson, 162 La. 614, 110 So. 878 (1926). The court recognized that included in the various delegated powers to the police jury were the powers for “public roads” generally, along with power for “making and repairing roads” and “road districts.” Also, included in the police juries’ powers was the authority “to sue and be sued in certain cases.” These legislative powers remain in our revised statutes. La. R.S. 33:1236 and 48:481. In referencing these limited powers, the court stated that police juries “can exercise no power beyond that which is germane or incidental to the powers which have been delegated to them by the Legislature.”
In a case rendered at the same time as American Ice, this court specifically addressed the policy jury’s power over roads stating:
The police jury is vested with discretion and has plenary authority as to public roads in their respective parishes and the courts are without authority by writ of injunction to direct how the police jury shall use this discretion in advance of its having taken any action whatever.
Cook & Boyett v. Police Jury of Bienville Parish, 5 La.App. 692, 1926 WL 4077 (La.App. 2d Cir.1926). Another general plenary power of a public corporation, flowing from its right to sue and be sued, is “the power to settle and compromise disputed *779 claims in its favor or against it before or after suit.” Board of Com’rs of Orleans Levee Dist. v. Blythe, 163 La. 929, 113 So. 150 (1927).
Reviewing the “supremacy” of a police jury for the creation of new public roads in the early twentieth century, the Supreme Court stated that 114“the police jury is expressly designated as the governing authority in road districts and subroad districts, and it is given supervisory power in all matters pertaining to road construction, location, and maintenance in such districts.” Donaldson v. Police Jury of Tangipahoa Parish, 161 La. 471, 109 So. 34 at 39 (1926). Referring to a police jury’s power over a road in Caz-Perk Realty v. Police Jury of Parish of East Baton Rouge, 213 La. 935, 35 So.2d 860 (1948), the court stated that “[pjolice juries have both legislative and executive functions to perform, and ... are vested with large discretion in their sphere of action,” citing Cruse v. Police Jury of LaSalle Parish, 151 La. 1056, 92 So. 679 (1922).
From this authority, without following any special statutory procedure in the first place, Caddo acted to draft the Dedication Form contract and to seek from landowners these dedications, exercising its general plenary power to contract for public roads. These disputed contracts were incidental and essential to its broad power over public roads, and no statute directed or limited its plenary contract power in fashioning its Dedication Form.
Offering no payment of a price, Caddo sought from each landowner a type of donation for road use. Addressing dedications in his treatise, Professor Yiannopou-los states that “[i]n a strict sense, a formal dedication is a donation of a thing or of its use to the public.” A.N. Yiannopoulos, Property § 97, in 2 Louisiana Civil Law Treatise (4th ed.2012). Louisiana donation law, however, requires the formality of an authentic act and the specific acceptance of the donee. La. C.C. arts. 1541 and 1544, and former [ 15Articles 1536 and 1540, Civil Code of 1870. Of particular note, the do-nee’s acceptance of a donation under the former articles of the Civil Code of 1870 was interpreted by the Louisiana Supreme Court, as follows:
We hold that the requirement that a donee accept the donation in “precise terms” obligates a donee to use express, formal, and unconditional language in his acceptance. This codal provision, we think, requires an explicit acceptance. A tacit acceptance or an acceptance inferred from the circumstances will not suffice.
Rutherford v. Rutherford, 346 So.2d 669, 671 (La.1977).
The comparison of a road dedication transaction to Louisiana’s donation law for immovables, however, can only go so far. Because a public thing lies at the core of the transaction with expected remunerative value to the landowner, it is very clear from the jurisprudentially developed law for dedications that the authentic act requirement and the donee’s acceptance were not essential for Caddo’s Dedication Forms. Yiannopoulos, Property § 97, supra. In summary, it might best be said that these Caddo transactions were like donations with the landowners receiving no payment for the transfer. Nevertheless, since the public road use was central and that use soon began, our special form rules and other features for donations were not required. Cf., Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961).
Despite these special allowances for a donation-like dedication to the public use, I see nothing in the law preventing Caddo’s right to give an express acceptance for these dedications limiting the transfers to only the essential public thing. It was *780 Caddo’s prepared contract; Caddo was duly authorized with broad discretion to give its consent and enter the contract; | K,and Caddo’s expressed intent cannot be ignored. Upon receipt of the dedications from the landowners, Caddo could have attached to each of the executed Dedication Forms its separate formal act of limited acceptance of the road use, indicating non-acceptance of any transfer of other components of the land’s ownership. Such limitation placed upon its contract with the landowner would not offend any interest of the public protected by our law of public dedications. Just as the landowner could have clearly expressed his intention to give only the public use as a servitude, Caddo, as a veritable donee, could limit its acceptance excluding the “private thing” component of the grant, the underlying “fee” interest. Moreover, Caddo’s expression of such limited acceptance of these dedications would not alter the reason or cause which prompted the landowners’ dedications. That cause for their donations was for the facilitation of a public road, and any transfer of additional rights in the property unnecessary to ensure the public road use was unclear from their written acts and the law at the time of such acts.
With this understanding of the Dedication Form as a type of donation, the Resolution of 1983 was not prohibited by any cited law restricting a police jury’s authority and was within Caddo’s contractual power of acceptance of the landowners’ grant, clarifying that only the public use or a servitude was intended by the conveyances. On this basis, I concur in the reversal of the trial court’s judgments.
As a final matter, I am further persuaded in these conclusions by the significant effect upon land and mineral transactions subsequent to 1983 which the recorded Resolution by the public body certainly caused. Since 1171983, many unitized wells drilled in the parish included within those units the road properties obtained for public use by the Dedication Form. For almost thirty years, unit production royalties for those roads have undoubtedly been paid to the private landowners instead of Caddo in reliance upon the Resolution.

. Revision Comment (b) to Civil Code Article 450, defining public things, makes clear that a public thing is dedicated to public use and held in the public trust.

. Revision Comment (b) to Civil Code Article 453, defining private things owned by a pub-lie subdivision, cites the Supreme Court holding that such private thing "may be dealt with as the [public body] sees fit." La. C.C. art. 453 Revision Comment (c) citing Anderson v. Thomas, 166 La. 512, 526, 117 So. 573, 579 (1928).

. In contrast, in a case where the object of the dedication grant was specifically described as a "right-of-way," the Louisiana Supreme Court found that only a servitude was conveyed to the public body for a road. Jones Island Realty Co. v. Middendorf, 191 La. 456, 185 So. 881 (1939). The object of the conveyance in the Dedication Form is listed as "land.”