**MATHEWS BROS. v. SCHOENBERGER**

———

(October 15, 1928. Opinion and Decree.)

———

Deutsch & Kerrigan, of New Orleans, attorneys for plaintiffs appellants.

O. S. Livaudais, of New Orleans, attorney for defendant, appellee.

JONES, J. Plaintiffs, real estate brokers, averring performance on their part, sued defendant for a commission of $1,280 and $250 attorney's fees upon the following contract:

"New Orleans, La., Oct. 7, 1925.

"Mathews Bros., City. Dear Sirs: I offer to purchase for thirty two thousand dollars the following property: 900 Peters Ave.

"Terms $6,000.00 cash Bal. thru homestead

. "Taxes: 1925 prorated Paving to be paid by purchaser.

"Act of Sale to be passed within 45 days

"Act of sale to be passed by purchasers Notary Public, at my expense, and as soon as this offer is accepted in writing, I will deposit on account of the purchase price, $3,200.00, which deposit is to be non-interest bearing and is not to be earnest money; either party hereto reserving the right to demand specific performance. My deposit is to be placed by you in any Bank, of your selection without responsibility on your part in case of suspension, liquidations, receivership or failure of said Bank. Vendor will not owe purchaser any penalty in case of legal defect in title. In the event of acceptance, and my failure to comply with the terms of this offer I obligate myself to pay on demand your com-

mission of 4% on this sale, and any attorney's fees and costs of court which you might incur in forcing collection of your claim.

"If the deposit is forfeited the agent is to deduct his commission and balance to be turned over to vendor.

"Should vendor not have title in his name when this offer is accepted I will allow reasonable time to tender good and valid title.

"This offer is to remain good and irrevocable until ————.

"Purchaser's Signature: S. B. Schoenberger

"Address, Triumph, La.

"New Orleans, La. Oct. 8/25

"I accept above offer and agree to pay your brokerage of $1,500.00 and any attorney's fees and costs of court incurred in forcing collection of claim for commission.

"Owner's Signature: S. J. Peters."

After his exception of no cause of action had been overruled, defendant answered, admitting his signature, but denying the validity of contract on account of the alleged potestative condition set forth in the words: "Bal. thru homestead." Defendant further pleaded estoppel by laches because the plaintiff claimed no default and made no demand for commission until shortly before this suit was filed, more than a year after the purported acceptance, although defendant had told the plaintiff shortly thereafter that he would do nothing further in the matter.

Plaintiff appeals from an adverse judgment.

Trial began with cross-examination of defendant under the act. When asked by the judge to explain the transaction, defendant answered as follows:

"A. Judge, when I appeared in the real estate office that morning I made him an offer of $32,000.00 for the property. He said he would make a homestead loan at $26,000.00 and put the deal through.

"Q. Who said that?
"A. This man, that he would get the balance and make the loan, if I could raise $6,000.00—the two brothers. They look alike to me. I think this is the one —Mathews Brothers—Mr. Mathews. So he said he was in a hurry and he pulled out a paper and I signed it, and he was to make a loan at $26,000.00 to cover the purchase of the property at $32,000.00. I was supposed to give him $6,000.00. I did not know—he did not ask for a commission or nothing. I was to make the first deposit, and I signed the paper and went away. About a week or two after that, one of the men came and asked me for the money, and I told him I did not have the money and could not raise it. About two weeks after that a lady and a man came—this same gentleman here, and made a demand for money, and I told them I could not raise the money and had to withdraw the contract. No more was said until a year afterwards when I got a letter from an attorney, and about a week afterwards they entered suit against me. That is how I understand the contract."

He later said that the land was misrepresented to him; that he went to see one or two homestead men in this city, including his brother-in-law, who was a director in one, to ascertain the amount that could be borrowed on the property, and was told the best loan obtainable was $16,000; that Mr. Mathews and a young lady had called on him about two weeks after the acceptance to ask for the deposit, and had been told by him that he was unable to raise the money and it was impossible for him to sign the note and take the property; that he heard nothing further until more than a year later, just a few days before suit was filed, when he received a letter of demand from plaintiff's attorney. This testimony is partly confirmed by a letter offered in evidence from plaintiffs to defendant, dated October 9, 1925,

in which notice of acceptance of contract is given and request is made "for further arrangements."

The only other witnesses, Mrs. Kelliher, an employee of plaintiff, and Jeff Mathews, a member of the firm of Mathews Bros., confirm defendant as to their demand for money, but they both testify that he promised to make a deposit as soon as he could secure the money. Mathews further testified that he was a director in several and an appraiser in two New Orleans homesteads; was thoroughly familiar with real estate values; that this property was worth at the time between $35,000 and $36,500, and that he would have no difficulty in securing a homestead loan of $26,000 on semi-commercial property of this kind; that the property had been listed with his firm for some time for either $35,000 or $45,000, and they had a contract for its sale.

In his able argument before this court, plaintiff contends that the obligation to secure the homestead loan rested solely upon defendant under the contract, but plaintiff nowhere denies the positive statement of the defendant that plaintiff had promised to secure the homestead loan of $26,000.

Evidently Mathews did not then so construe the contract, which, in our opinion, is by no means clear on this point. It simply provides that the balance is to be secured through a homestead, but it does not say whether the purchaser or the vendor shall secure the homestead loan.

In the case of Titus vs. Cunningham Jackson et al., 7 La. App. 37, this court held a similar agreement to purchase null and void. Though a writ was granted by the Supreme Court on other points, the question as to the effect of the so-called potestative condition in contracts of this kind was not considered as it was not before the court. See Titus vs. Cunningham, 164 La. 431, 114 So. 86.

Plaintiff contends that this decision is not controlling because the present case differs from the Titus case materially. Here only the purchaser and the real estate agent are involved, whereas to the Titus case both real estate agents and both vendor and purchaser were parties.

He states his conclusion on page 11 of his brief as follows:

"Where, therefore, the broker is employed by one who wishes to purchase a specific piece of property, subject to a homestead loan, when the broker produced a vendor, ready, willing and able to sell on the purchaser's own terms, he has done all that is within his power to do, and he becomes entitled to his commission on the failure of his principal to comply with his agreement."

We consider this conclusion untenable, because the so-called differences are not material.

In the Titus case, the plaintiff, also a prospective purchaser, sued for the return of his deposit because his offer to purchase was not legally binding, as it contained the phrase, "subject to a homestead loan," a potestative condition. Plaintiff relies upon the decision of this court in the case of Deano vs. Garcia, No. 9369 on the docket of this court, which was decided with one judge dissenting in 1923.

In the Garcia case, Judge Renshaw of the First City Court had maintained an exception of no cause of action to the petition of a real estate agent who was suing the supposed purchaser for his commission on a contract similar in all essential respects to that involved here. In reversing the lower court, this tribunal

held that such a contract, while it might be potestative as between the purchaser and vendor, was valid as between the real estate agent and the purchaser.

We had considered that the Deano decision was impliedly reversed by this court in the Titus decision, as they are necessarily contradictory; but, as there seems to have been some doubt about the matter, we now expressly overrule the Deano decision, and hold that the Titus case is controlling.

In this view of the case we do not find it necessary to pass upon the plea of estoppel.

For above reasons, the decision of the trial court is affirmed.