### RICHARDSON v. CHARLES KIRSCH & CO. et al.
### No. 16900.

Court of Appeal of Louisiana. Orleans.
May 22, 1939.

Rehearing Denied June 12, 1939.

See 189 So. 621.

Writ of Certiorari Denied June 26, 1939.

Wm. Donnaud, of New Orleans, for appellants.

Anna Judge Veters, of New Orleans, for appellee.

JANVIER, Judge.

Mrs. Victoria K. Richardson, having agreed in writing to buy certain real estate which the owner had listed for sale with Charles F. Kirsch, a real estate agent conducting his business as Charles Kirsch & Company, and having made the required deposit, being unable to obtain title to the said property within the time limit fixed in the contract, brings this suit against Kirsch, and Mrs. Goldie Carson Giuffria Murphy, alleged to be the owner on whose behalf plaintiff's offer had been accepted, and prays for solidary judgment against Kirsch and Mrs. Murphy, for the return of the deposit and for an additional sum equal in amount to the deposit required by the contract. Plaintiff also prays for a reasonable attorney's fee and for such expenses as she has sustained in connection with title examination.

The defendants filed what they term pleas of "misjoinder" and also exceptions of no cause of action. These pleas were overruled and defendants filed answers in which they averred, in effect, that the owner of the property was at all times ready and willing to make valid title thereto, but that plaintiff had not called upon her to do so and had not notified her of the time and place for the passing of the act of sale and had not formally tendered the purchase price, nor offered to comply with the provisions and terms of the contract. In addition, Kirsch averred that he had earned his commission of $320 and that, therefore, since plaintiff had failed to comply with her contract to purchase, he should be permitted to retain out of the deposit the amount of the said commission.

There was judgment in favor of plaintiff solidarily against Kirsch and Mrs. Murphy ordering the return of the deposit and there was further judgment against Mrs. Murphy for $800, which is the amount of the deposit which was required by the contract, and also for $200 as an attorney's fee and for $58.50, representing expenses incurred by plaintiff in connection with title examination. Kirsch and Mrs. Murphy have appealed.

■ In this court counsel for defendants urges us to maintain the plea, which he terms one of "misjoinder", but which, in reality, is one of non-joinder, and he also argues that, in any event, we should dismiss the suit on the exception of no cause of action. The first-mentioned plea is based on the fact that, though plaintiff alleges that when the owner (Mrs. Murphy) purchased the property in question she was the wife of Joseph D. Giuffria, who was still alive, she, plaintiff, failed to make the said Giuffria a party-defendant in this proceeding, although she had alleged in her petition that one of the requirements of her attorneys, who examined the title to the property, was that any possible interest of the said Joseph D. Giuffria should be divested. It is argued that, if the then husband, Giuffria, had any interest in the property in question by reason of the fact that it was purchased by his wife during the existence of the matrimonial community, he was a necessary party to this suit.

But plaintiff has not alleged, nor is it a necessary inference from any of her allegations, that Giuffria has, or had any interest in the property. The title examiners made a demand that any possible interest which he might have should be divested in order to make it impossible that he or his heirs later contend that the purchase, though made by the wife, had been made otherwise than with her separate funds. That requirement in no way constituted a

concession of actual interest in Giuffria. On the contrary, plaintiff concedes, as do defendants themselves, that Giuffria, in truth, had no interest in the property. All that plaintiff desired was that it be made impossible that later Giuffria or his heirs contend that he had any interest and that that interest had not been divested.

In support of the contention that the suit should be dismissed on exception of no cause of action, counsel for defendant presents three separate and distinct arguments. First he says that the agreement, which was attached to the petition, contained a potestative condition in that the offer, although it stipulated for a payment of only a part of the purchase price in cash, did not fix the rate of interest to be paid on the credit portion and did not set forth the particular homestead association through which the credit portion should be financed. Exceptors point to Titus v. Cunningham, 7 La.App. 37, and to the following authorities as supporting the view that such offer is potestative: Mathews Brothers v. Schoenberger, 11 La.App. 155, 123 So. 133; East Bank Land Company v. Hoffstetter, 13 La.App. 564, 125 So. 160; Luderbach v. Cristina & Lauricella, 12 La. App. 28, 125 So. 161; Gruntz v. Frank Jordano, Inc., 12 La.App. 172, 125 So. 167; Kaplan v. Whitworth, 116 La. 337, 40 So. 723; Young v. Cistac, 157 La. 771, 103 So. 100.

There appear to be two answers to this argument. First, even though the condition on which the contract depended may have been potestative when the contract was made, it lost that character when the obligor, though possibly not necessarily required to act, did so and thus fulfilled the condition which, until then, may have been unenforceable. Conceding that the contract, as written, did not bind plaintiff to apply to any particular homestead for a loan and did not stipulate the interest rate which plaintiff should pay, and conceding that, to that extent, it contained a potestative condition, still, when she applied for and obtained the loan from a homestead as a result of which the vendor would obtain full payment in cash, no longer could it be said that the fulfillment of the contract depended solely upon her will. Board of Commissioners, etc., v. Concordia Abstract & Realty Company et al., 181 La. 373, 159 So. 588.

Plaintiff alleged that she had applied for and had obtained the approval of the necessary loan, subject only to title examination, and, having made this allegation, no longer may the contract be pointed to in connection with an exception of no cause of action, as containing a potestative condition.

For still another reason defendants cannot be heard, in support of their exception of no cause of action, nor on the merits of the controversy, to rely upon the charge that the contract was potestative and, therefore, null ab initio, and that is that they did not rely on that point in support of the exception in the court below, and later, when they filed their answer, contended not only that the contract was valid and binding, but that, by its breach, plaintiff had made herself liable to them. Surely, defendants cannot be heard to claim that, by failure to comply with the terms of the contract, plaintiff has incurred liability for its breach, and, in the same breath, to argue that the said contract was void ab initio.

Kirsch presents the additional contention that the petition sets forth no cause of action against him for the reason that it seeks judgment against him, as well as against the owner of the property, for the return of double the amount of the deposit, although obviously, he, as the real estate agent, cannot be held liable for more than the amount of the deposit left with him. It is quite true that he in no event can be liable for more than the return of the deposit, but that fact does not warrant the maintenance of the exception even as to him. Since the petition does show a cause of action against him for the return of the deposit, the exception cannot be maintained.

The third ground on which it is contended that the exception of no cause of action should be maintained is that in the petition there is no allegation that the defendant owner has been put in default, nor are there allegations of fact which would show that such putting in default was not necessary.

But plaintiff alleges that, only four days before the day on which the contract would have expired and while plaintiff was endeavoring to have Mrs. Murphy comply with certain requirements of the title examiners, the said defendant sold the property to another purchaser, and then, plaintiff in effect alleges that it was no longer possible for the said defendant to convey

title to her. If this is true and if Mrs. Murphy disposed of the property and had no way of re-acquiring it so that she might comply with her agreement to sell to plaintiff, then she actively breached that agreement, and, if she did that, then there was no necessity that plaintiff place her in mora and that is what plaintiff's petition seems to charge.

We think that the exceptions were properly overruled.

When we examine the record, we find the following: On November 14, 1936, Mrs. V. K. Richardson addressed to Charles Kirsch & Company, agent, an offer reading as follows:

"Agreement to Purchase
"Charles Kirsch & Co., Agent
"New Orleans, La. November 14, 1936
"I offer and agree to purchase Duplex #5519-21 S. Liberty St. measuring about ........ or as per title, for the sum of Eight Thousand Dollars and 00/100, on terms of $2000.00 Cash, Balance by loan either thru F. H. A., or Homestead on 15 year plan.

"Property sold subject to lease now existing.

"The paving of None

"The taxes of to be prorated as of date of act of sale.

"All proper and necessary certificates and revenue stamps to be paid by vendor.

"Act of sale to be passed before Homestead's or F. H. A.'s., Esq., Notary on or prior to Jan. 15, 1937, at expense of purchaser.

"If this offer is accepted I will deposit with Charles Kirsch & Co., within 7 days in cash Eight Hundred Dollars and 00/100 ($800.00) Dollars.

"This deposit is to be non-interest bearing and may be placed in any bank of your selection without responsibility on your part in case of failure or suspension of such bank pending settlement. In the event that I/we fail to comply with this agreement within the time specified, the vendor shall have the right, either to declare the deposit, ipso facto, forfeited, without formality and without placing me/us in default, time being the essence of this contract; or the vendor may demand specific performance. In the event that my/our deposit is forfeited the commission of the agent shall be paid out of this deposit, reserving to the vendor the right to proceed against me/us for the recovery of the amount of the commission. In the event

that the vendor does not comply with this agreement to sell within the time specified, I/we shall have the right either to demand the return of double the deposit, or specific performance. The commission is earned on the signing of this agreement and shall not be affected by any subsequent agreement of the parties hereto, or by annulment of this contract by any court.

"In the event either I/we or the vendor, should fail or refuse to comply with the terms of this offer, if accepted, and it should become necessary for any of the parties herein to employ an attorney to enforce compliance herewith, or to institute or maintain a suit for damages, the party failing or refusing to comply, shall pay, in addition to the commission, the fee of the attorney so retained—to be fixed by the Court and any and all costs incurred by reason of such suit.

"This offer remains binding and irrevocable through Tuesday, Nov. 17, 1936, Noon.

"This offer made with understanding that lower apt. be repainted with high grade oil paint.

"(Signed) Mrs. V. K. Richardson."

Though the copy which we find in the record does not show the signature of anyone accepting on behalf of the vendor, it is admitted that there was an acceptance which was signed by William Donnaud, as attorney for the vendor.

At that time the property in question stood on the public records in the name of Mrs. Goldie Carson, who was the divorced wife of John G. Giuffria and then the wife of Edward Murphy, having been purchased by her while she was the wife of Giuffria.

William Donnaud, who, as "attorney for vendor", accepted the offer, was attorney for Mrs. Murphy and was authorized to represent her in the matter, though, at the time she made the offer, Mrs. Richardson did not know who was the owner of the property.

Instead of depositing $800 in cash, as required by the contract, Mrs. Richardson deposited with Kirsch certain bonds, which were acceptable. Concerning this substituted deposit no point is sought to be made. At the time the contract was entered into Giuffria, the former husband of the owner, had been interdicted. Shortly after the acceptance of her offer to buy the property, Mrs. Richardson applied to the Citizens.

Homestead Association for the necessary loan and, in due course, that loan was approved subject to satisfactory title examination. Mrs. Richardson and, apparently, also the Citizens Homestead Association applied to Lawyers Title Insurance Corporation for title examination. That company found certain inscriptions, or encumbrances, which it required should be removed. These were the following:

First, that, as the property had been acquired by Mrs. Murphy during her marriage to Giuffria, who had since been interdicted, judgment in the interdiction proceedings should be obtained authorizing his curator to intervene in the proposed sale and to divest any possible interest which he might have.

Second, that prior to the agreement of sale of the property to Mrs. Richardson, Mrs. Murphy had contracted to sell it to Coralie H. Williams and that this contract had been registered in the conveyance records of the Parish of Orleans and had also been recorded in the mortgage records. It was required that these inscriptions should be cancelled.

Third, that the said Coralie H. Williams had filed suit on the said contract, seeking the return of double the deposit which she had made, or, in the alternative, the delivery of the property which was the subject of the contract, and had recorded in the mortgage office and had registered in the conveyance office notice of lis pendens. The title company required that the inscriptions be erased, and,

Fourth, that two conventional mortgages, one in the principal sum of $1,200 and another in the principal sum of $5,447.58, inscribed against the said property, should be cancelled and erased from the records.

When these requirements were communicated, no complaint seems to have been made, but Mrs. Richardson apparently was not herself informed of any progress which was being made in compliance with the requirements. On January 11, 1937, just four days before the final day fixed in the contract for the consummation of the sale, Mrs. Murphy transferred the property to Jack A. Porobil for $500 cash and the assumption by him of the outstanding mortgages.

When Mrs. Richardson learned of this transfer, she assumed that Mrs. Murphy had despaired of complying with the requirements of the title company and had otherwise disposed of the property, and, acting on the said assumption and without formally calling for the delivery of title, she, on February 8, 1937, through her attorney, made demand on Kirsch and on Mrs. Murphy for the return of her bonds and, in addition, for the amount of the deposit, as the penalty provided in the contract, and shortly thereafter filed this suit.

The important question is whether Mrs. Richardson was justified in treating the action of Mrs. Murphy as indicating an active breach of the contract and as giving her the right, without putting Mrs. Murphy in default, to sue for the penalty provided by statute and fixed in the contract.

In the first place, it seems to be well settled that the mere fact that one who agrees to sell property to another does not own the property is not sufficient to warrant the assumption that the contract cannot and will not be complied with. In Codifer v. Holdsworth, 7 La.App. 395, the Court of Appeal for the First Circuit said: "* * *. there is nothing wrong or illegal in promising to sell the property of another. The promissor may be a confidential agent of the owner or he may anticipate the acquisition of the property."

In Bussey v. Wise-Miller et al., 172 La. 198, 133 So. 443, 445, the Supreme Court considered facts quite similar to those found here. There a Miss Barilleaux had contracted to sell certain property. The prospective purchaser considered the contract as actively breached because the prospective vendor had never acquired title. The Supreme Court said: "* * * It did not follow, because Miss Barilleaux had not acquired title at the time the suit was filed, or even on the day of trial, * * * the allegation that she was unable to make title, together with the circumstances in support of it, was susceptible of being overcome by proof. In the event the allegation and the circumstances were so overcome, plaintiff's case would be without evidence of a putting in default, or of an excuse for not putting in default, and therefore the sale could not be rescinded and the deposit recovered, the rescission being necessary to a recovery of the deposit."

See, also, Buckman v. Locantro, 173 La. 621, 138 So. 123; Giacoma v. Yochim et al., 13 La.App. 94, 126 So. 84.

In the case before us Mrs. Murphy tendered evidence for the purpose of proving that the transfer to Porobil had been made in order that Porobil might make a further transfer direct to Mrs. Richardson and that, thus, there would be avoided the delays and inconveniences consequent upon requiring the curator of Giuffria to appear in the transfer to Mrs. Richardson. Evidence was also tendered to show that Porobil had given a counter letter and that he stood ready to transfer the property whenever required to do so. Thus, the rebuttable presumption which might have resulted from the sale to Porobil could easily have been overcome had that evidence been admitted. It was just such a possibility that the Supreme Court had in mind in Bussey v. Wise-Miller, supra. It is true that, in that case, the Supreme Court found that the other party to the contract knew, at the time the contract was entered into, that the prospective vendor was not the owner. But we do not see that any possible distinction can be based on that point.

Plaintiff's counsel objects that plaintiff would not have been satisfied with a title from Porobil since she was entitled to the personal warranty of the real owner of the property, who was Mrs. Murphy, and with whom the contract had been made.

There are several answers to this contention.

First, it is evident that when Mrs. Richardson agreed to buy the property she did not know who was the owner of it and, therefore, did not look to the personal warranty of the owner, and that this is so is made evident by her following testimony:

"Q. Well, now then, you didn't care who sold it to the homestead; is that correct? A. I wanted the property and I was buying it through the homestead.

"Q. Now, whoever the homestead secured it from, so long as they sold it to you with a clear title, made no difference to you, did it? A. If the title was clear, no, it didn't.

"Q. It didn't make a particle of difference; is that correct? A. Yes."

Furthermore, while there is no doubt, as the Supreme Court said in Bussey v. Wise-Miller, that a prospective purchaser is entitled to the personal warranty of the person who contracts to sell the property, it is very evident here, as it seems to have been in that case, that, so far as Porobil was concerned, the real owner could have had him transfer it back to her so that she might make title direct to Mrs. Richardson, had the latter demanded that that be done. We think that the evidence tendered by Mrs. Murphy should have been admitted since it was quite pertinent to the question at issue, which was whether or not the transfer to Porobil showed a real divestiture of the title of Mrs. Murphy, or merely evidenced that the property was being put in his name for convenience, and could be delivered to anyone to whom Mrs. Murphy might request that he transfer it.

We next consider the various other objections which plaintiff contends made it impossible that the property be transferred to her within the time limit fixed in the contract.

In the first place, it is evident that the mere fact that there were conventional mortgages recorded against it would not give the prospective purchaser the right to claim that the contract of sale had been actively breached, for it is well settled that, where there are conventional mortgages against property which forms the subject of a contract of sale, this is no legal justification for refusal to accept title where the total amount due on those mortgages is less than the price at which the property is to be sold.

"As to the incumbrance, it is well settled that a mortgage on the property forms no legal justification for refusing to accept title where the price agreed to be paid for the property is more than sufficient to satisfy the mortgage debt. Grimshaw v. Hart, 6 Rob., La., 265; Kinberger v. Drouet, 149 La. [986], 999, 90 So. 367; Murphy v. Hussey, 117 La. 390, 41 So. 692." Jaenke v. Taylor, 160 La. 109, 106 So. 711, 714. See, also, Lomel Realty Corporation v. Chopin, 177 La. 474, 148 So. 683.

It is shown that it is quite customary, where a sale involves property which is encumbered with a conventional mortgage, for the mortgage note to be presented at the time of the sale and paid out of the proceeds and cancelled at that time. Mr. Adams, vice-president of the title company which was employed by Mrs. Richardson to examine the title of the property, concedes that " * * * where the mortgages are less than the amount of the sale, (they) are paid off at the time of the passage of

the sale and the notary retains the money and pays off the mortgage notes and cancels them himself simultaneously with the passage of the act." It seems to be quite evident that the total amount remaining due under the conventional mortgages was substantially less than the price which plaintiff had agreed to pay for the property.

We conclude, therefore, that the fact that there were conventional mortgages against the property did not justify plaintiff's failing to put Mrs. Murphy in default.

We next consider the situation as it was affected by the suit of Miss Coralie Williams. Let us repeat that she had inscribed notice of lis pendens in both conveyance and mortgage offices and that she had also recorded her contract of sale in both of these offices. While we are unable to find actual proof in the record of the fact, counsel for defendants stated in open court and states in his brief that the suit of Miss Williams had been settled prior to the time at which the act of sale was required by the contract to be passed and that the inscription of that notice of lis pendens, as it appeared in the mortgage office in M. O. B. 59, Folio 75, was duly cancelled on January 12, 1937. If that is true, it is very evident that the settlement of that suit would have authorized the erasure from all records—both conveyance and mortgage—of the inscription of the contract and also of the inscription of the notice of lis pendens.

Counsel for plaintiff objects that, even though the notice of lis pendens had been erased from the mortgage records, nevertheless it still appeared in the conveyance office. But we do not find that the statute which provides for the inscription of a notice of lis pendens authorizes that it be inscribed in the conveyance office at all. The act to which we refer is No. 22 of 1904, and it obviously provides for the filing in the mortgage office only. The Supreme Court, in Continental Securities Corporation v. Wetherbee, 187 La. 773, at page 808, 175 So. 571, at page 582, referring to this statute, said: " * * * Under the act the only effective notice is the filing of the notice of lis pendens, and its registry in the mortgage records."

But, as we have said, even assuming that there is any statute authorizing the inscription of said notice in the conveyance office, certainly the settlement of the suit, if there was a settlement, would have effectively authorized the erasure of the inscription in both offices. The same may be said concerning the inscriptions of the contract itself.

While it is true, as this court has held in State ex rel. Holmes v. Donaldson et al., Orleans No. 7686, decided February, 1920, see Louisiana and Southern Digest, that the inscription of the contract of sale of property effectively prevents its sale to anyone else and that, therefore, Miss Williams was within her rights in registering her contract of sale, still, if she settled her suit prior to January 15, 1937, as, it is said, could have been shown, surely that settlement authorized the erasure of the inscription of that contract. It thus became important to determine whether there was a settlement of that suit and it was, thus, necessary that evidence on that issue be considered.

When this matter was transferred by the Supreme Court to this court (see 191 La. 991, 187 So. 1) that court said that the only question at issue was whether or not the failure of the parties to carry out the provisions of the contract was due to the fault of the plaintiff, or to the fault of Mrs. Murphy. That question cannot be determined without the consideration of the evidence tendered by defendants, which evidence was objected to and was excluded by the trial court.

There is involved in this case the question of the right of the real estate agent to retain the commission. While it is true that the offer provides that Mrs. Richardson is liable for the fee of the real estate agent whether or not this contract is annulled, and while it is also true that the prospective vendor, Mrs. Murphy, by the terms of the acceptance, is also made liable for the payment of the commission, that feature of this type of contract has been frowned upon by the Supreme Court in Boisseau v. Vallon & Jordano, Inc., 174 La. 492, 141 So. 38, and in Eastbank Land Company, Inc. v. Hoffstetter, 170 La. 594, 128 So. 527, and by this court in Spiro v. Corpora, La.App., 174 So. 145. We think that the question of whether the real estate agent is entitled to a commission and the question of who should be required to pay this commission should both await the final determination of the principal controversy, since liability for

the commission should be placed upon the party at fault.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is annulled, avoided and reversed, and that the matter be and it is remanded to the Civil District Court for the Parish of Orleans for further proceedings not inconsistent with the views herein expressed and according to law.

Reversed and remanded.