No. 717.—PINCKNEY C. BETHEL v. JOSEPH T. HAWKINS.

A conversation between one party to a contract and a third party, out of the presence of the other party, is inadmissible on a trial in a suit to enforce the contract.

A loan of Confederate money or notes, as shown by the act of mortgage given to secure its payment, cannot be enforced by the courts of this State. Constitution, article 127.

A party accepting a mortgage to secure the payment of a debt, is bound by the terms and sense in which it is expressed.

APPEAL from the Third Judicial District Court, parish of St. Mary. Train, J. Tucker & Davis, J. G. Oliver & Dumartrait, for plaintiff and appellee. M. E. Girard, for defendant and appellant.

TALIAFERRO, J. In June, 1863, this suit was filed by the plaintiff, who prays judgment against the defendant on his two promissory notes with the interest thereon, each for the sum of $7500, dated the eighth of May, 1862, payable respectively in two and three years after date, with interest at eight per cent. per annum from date. He also prays a decree enforcing the mortgage given to secure the payment of the notes so far as relates to the land described in the act. By supplemental petition, filed twenty-third April, 1868, the suit was revived against the widow and natural tutrix of her minor children, the defendant having died during the pendancy of the suit. The answer is a general denial. Judgment was rendered as prayed for with an order that the land mortgaged be seized and sold to satisfy the debt. The defendant has appealed.

The consideration for which the notes were given was a loan of Confederate money as expressed in the act of mortgage. The plaintiff aimed to evade the effect of this declaration by introducing himself as a witness, detailing conversations had with the defendant before and at the time the loan was made, and subsequently going to show that the loan was made by furnishing the borrower exchange in drafts and checks. This testimony was objected to by the defendant, and the objection being overruled he took a bill of exceptions. We do not

think it important to pass upon this bill of exceptions, as the testimony is insufficient to rebut the recital in the act of mortgage.

A second bill of exceptions was taken by the defendant's counsel to the ruling of the court admitting that part of the plaintiff's evidence which is in these words: "Witness at once protested (on seeing the mortgage), and told the recorder that it was not the understanding or agreement between defendant and himself. That witness wanted the mortgage to be altered or a new mortgage given, leaving out the words 'Confederate money,' as the money given was not Confederate money, and witness wanted to carry out the original contract." What the plaintiff said to a third party, out of the presence of the defendant, he could not give in evidence, and the testimony should have been rejected. 12 An. 179; 5 L. 414; 11 An. 503, and 3 An. 280.

The act of mortgage was executed before a notary and two witnesses on the eighth of May, 1862, the same day the notes were given, and they are identified with the act of mortgage by the notary's *paraph ne varietur*. The defendant's wife, authorized by the husband, joined in the act and made a renunciation of her rights upon the property mortgaged. These acts were required by the plaintiff to be done before the money was advanced. It appears that the plaintiff is a resident of Memphis, Tennessee, and was so at the time the loan was made. He was not present when the act was executed, nor was there any person present who accepted the mortgage for him. But the plaintiff seems to have acquiesced in the act, for he says in his own testimony that "defendant came to witness' home with the notes, telling witness that the defendant had given the mortgage with the renunciation of his wife; witness then let defendant have the balance of exchange, either in drafts or checks, etc." In his own testimony there is plainly a studied evasion in stating the time at which he first saw the mortgage. He says: "Witness then, sometime thereafter (meaning the time he gave defendant the drafts, etc.), was at Franklin, and went to see the records." But an allegation in the petition is more definite as to the time when he protested to the notary and required the words "Confederate money" to be stricken out of the act or a new mortgage given. The petition sets out "that the note being due, and the troubles which for several years had agitated the country having passed away, your petitioner demanded of said Hawkins a compliance with his obligation, but was answered by said Hawkins that payment would not be made on the ground that the money loaned to him by your petitioner had been so loaned in Confederate bills or notes. That your petitioner, having *then* examined the act of mortgage, etc., discovered the allegation by said Hawkins in said act, that said loan of $15,000 had been made in Confederate currency." The plaintiff affects now to accept the mortgage according to what he says was the original agreement, namely, that he loaned the defendant $15,000 " in good current funds,

on condition that defendant would execute a mortgage on his land and slaves." He can only accept the act of mortgage in the terms and sense in which it is expressed. The law is plain on that subject. Civil Code, articles 1792, 1795, 1799. If he has not accepted the act according to its terms there is no contract, and he can not proceed with his case; if he has accepted in the only way in which he could accept, he is bound by the act and cannot gainsay its meaning and purport. There is no ambiguity in the terms used and no room for extraneous aid to interpret them. He is endeavoring to enforce a contract, the consideration of which was "Confederate currency." The nullity of contracts founded upon that unlawful currency has been frequently determined.

It is therefore ordered, adjudged and decreed that the judgment of the District Court be annulled, avoided and reversed. It is further ordered that this suit be dismissed at the plaintiff's costs.

## On Application for Rehearing.

LUDELING, C. J. The question presented in this case for decision is, was the consideration of the obligations sued on Confederate money or not?

For the purpose of this inquiry we considered all the evidence in the record, and we came to the conclusion that the averment made in the authentic act of mortgage, that the money loaned was Confederate currency, was true.

In the brief of the counsel for the appellee, it is earnestly urged "that the evidence contradicts the statements made in the act, that it shows that at least $7885 was in *bank checks*, transferred by the plaintiff to the defendant, and by the latter transferred, without discount, to his creditors in payment of his debts due before the war." The testimony of Fassit does prove that checks marked A. B. & C. were given to him by the defendant in payment of debts due by defendant before the war.

But this does not contradict the statement in the act of mortgage, that the loan was of Confederate currency, for it is proved beyond a reasonable doubt that *these checks were themselves drawn against Confederate currency*. These checks were drawn by the Bank of Tennessee on the Union Bank and the Citizens' Bank of New Orleans, and they were dated early in March, 1862; two of them expressly state that they are payable *in currency*.

Louis Monrose says: "I deposited said check in the Citizens' Bank, but received from said bank *Confederate money* for said check, by checks drawn on said bank." "I received Confederate money for said checks; the currency of New Orleans then was Confederate money, and was also bankable paper at that time."

George Freret, cashier of the Union Bank, says, "the original of the

copies marked A. & B. were paid by the Union Bank, upon presentation, *in Confederate currency,"* * * * " which was the currency of the city of New Orleans at that time."

Felix Morris says, the checks " marked A. & B. must have been paid in currency. *The bank paid nothing but currency.* The currency at New Orleans at the time of payment, was Confederate States notes, which Confederate States notes were bankable funds."

Charles Cammack, the teller of the Citizens' Bank, says the original of the copy marked C. was received by the Citizens' Bank, *on deposit,* April 17, 1862, and was credited to the last indorser, Robert Hare. The check " was placed to the credit of R. Hare *in currency, which at that time was Confederate money."*

R. Hare says : "I recognize the copies marked A. & C. The originals of said copies, marked A. & C. passed through my hands and were credited to the account of C. R. Fassit." "The original drafts were paid on presentation, and placed to my credit in the Citizens' Bank, and paid by said Citizens' Bank by checks drawn by me in the ordinary course of business, *payable in currency, which at that time was Confederate money."*

Is it possible for any one to doubt as to what was the fund against which these checks were drawn ? See Foster & McAlister, executors, *v.* The Bank of New Orleans, 21 An. 338.

The counsel for the appellee in his brief for a rehearing would seem to contend that the plaintiff loaned *checks* and not money.

The judicial admissions made in plaintiff's petition is, that he "loaned to Joseph T. Hawkins *the sum of fifteen thousand dollars.* He regarded the checks, then, as representatives of money, and the evidence shows that they were so, but of Confederate money.

The reason why this court has held that contracts for Confederate money should not be enforced was because they were contrary to public policy, and not because the money or notes had no value. Therefore, whether defendant paid his debts with the checks or not is immaterial in deciding this case.

We do not think this case similar to the case of Weaver *v.* Anfau. In that case the court said : " Nothing shows here that any part of these checks has been paid in Confederate money ; to believe so it would be surmising and conjecturing, when the law requires evidence so complete that it carries with it conviction upon the mind of the court. Can we say, or can any one say, that Confederate money was paid on those checks ?"

The proof in that case did not satisfy the court—in the case at bar it is full and satisfactory.

The evidence satisfies us that the plaintiff knew the checks would be paid in Confederate currency.

The rehearing is refused.