**No. 4184**

**Second Circuit**

—

**BANK OF MARIANNA v. GANDY**

—

(February 16, 1932. Opinion and Decree.)

—

Hawthorn, Stafford & Pitts, of Alexandria, attorneys for plaintiff, appellant.

Peterman, Dear & Peterman, of Alexandria, attorneys for defendant, appellee.

DREW, J. Plaintiff sued to recover $160 as damages for the alleged breach of a contract to purchase certain stocks of the Avoyelles Wholesale Grocery Company, Limited, of Alexandria, by defendant. It contends that the defendant contracted to purchase the stock for $660, and then refused to comply with his contract. The plaintiff later sold the stock for $500, the best price that could be obtained, thereby sustaining a loss of $160. Defendant contends that there was never a contract to buy, due to the fact that he was led to believe there were eleven shares of the stock, when in fact there were only ten shares; that he offered to buy the stock, believing he was buying eleven shares, due to the uncertainty of the letter from plaintiff as to whether there were eleven or ten shares of stock. He further alleged that his offer was for immediate delivery of the stock, in care of the Guardian Finance Company, Incorporated, that the stock was sent to the Guaranty Bank & Trust Company in violation of written instructions, and that he was not notified that the stock was there until more than one month after his offer to buy it. He denied there was any contract, due to error, and, in the alternative, if there was a contract, that it was breached by plaintiff when it failed to send the stock to the Guardian Finance Com-

pany as directed, and that it was without right, and acted in strict violation of instructions from defendant, in constituting the Guaranty Bank & Trust Company its agent. He further answers in the alternative that defendant was never put in default, and never notified that the stock would be sold on open market and defendant held liable for the difference in price. The lower court rendered judgment rejecting the demands of plaintiff, and it prosecutes this appeal.

The alleged contract consists of the following: December 3, 1929, plaintiff, by letter to defendant, offered to sell to him $1,000 of the par value of the Avoyelles Wholesale Grocery Company stock, if immediately accepted, for the sum of $750.

December 6, 1929, defendant replied as follows:

"Bank of Marianna, Marianna, Arkansas.

"Gentlemen: Replying to yours of recent date in which you proffer to sell $1000.00 of the Avoyelles Wholesale Grocery Company stock for $750.00, will say that I can pay $660.00, and will do so immediately if you send the stock in care of the Guardian Finance Company, Inc., of this city.

"By virtue of the fact, this stock has not paid but one or two dividends in ten years makes it not very attractive.

"Very truly yours,
"E. R. Gandy, M. D."

December 24, 1929, was the next communication from plaintiff, and is as follows:

"Dr. E. R. Gandy, 530 Murray St., Alexandria, La.

"Dear Doctor: On December 6th you advised you would pay $660.00 for $1000.00 par value Avoyelles Wholesale Grocery Company stock, and invited us to draw on you for this amount with the stock attached.

"We accepted your proposal and sent the stock with draft attached to the Guaranty Bank & Trust Co., but up to this writing we haven't received returns on our draft.

"Please advise us.
"Very truly yours,
"Vice-President."

Defendant was absent from his home when the last letter came, and did not receive it until some days later, apparently after December 28, 1929. He did not reply to the letter until January 17, 1930, after he had received another letter of date January 15, 1930, asking for a reply to the previous letter.

Defendant swears positively that he did not receive notice from the bank that it held the draft and stock until January 15, 1930, at which time he went to the bank in reply to a telephone message and refused to take the stock and pay the draft. It is to be noted that plaintiff did not reply to defendant's letter of December 3, 1929, wherein he made an offer for the stock, and nowhere in the record is it shown when the stock and draft were forwarded to the Guaranty Bank & Trust Company. The first indication that defendant had that plaintiff would accept his offer was upon receipt of the letter of date December 24, 1929, received by him on or after December 28, 1929. It is true that one of the officers of the bank testified that a draft came to his bank drawn on defendant, but did not attempt to fix a date. He also testified to the routine in the bank in regard to giving notice upon receipt of a draft. He did not know definitely about notice being given on this draft other than what was customary in the bank. Such testimony cannot overcome the positive testimony of the defendant that he was not notified.

Plaintiff, in his offer to sell the stock for $750, restricted the offer to an immediate acceptance. This offer was not accepted, but defendant made an offer on December 6, conditioning his offer on two things: Immediate acceptance and that it be sent to the Guardian Finance Com-

pany, Incorporated. The record discloses that neither of the two conditions in defendant's offer were accepted or complied with by plaintiff. It did not send the stock to the Guardian Finance Company; neither does the record disclose that it was sent anywhere immediately. Article 1805 of the Revised Civil Code reads as follows, and controls in this case:

"The acceptance to form a contract must be in all things conformable to the offer; any condition or limitation contained in the acceptance of that which formed the matter of the offer, gives him, who makes the offer, the right to withdraw it."

The reason defendant specified "if you send the stock in care of the Guardian Finance Company, Inc.," is shown by the record. However, his reason need not have been given. The reason for wanting quick action is also explained unnecessarily. However, any one buying stocks would necessarily want quick delivery due to the fluctuation ordinarily prevailing in stocks and bonds. As in this case, the record discloses that this particular stock dropped in value from $660 to $500 from the time of the offer made by defendant on December 3, 1929, to February 4, 1930, and some sold for $45 per share about February 6, 1930. The very fact that plaintiff did not accept the offer of defendant as made shows there was no meeting of minds, and therefore no contract. The will of both parties did not unite on the same point. Rev. Civ. Code, art. 1798; McDonough v. Winchester, 1 La. 188; Bethel v. Hawkins, 21 La. Ann. 620; Advance Thresher Co. v. Roger, 123 La. 1068, 49 So. 709.

There never having been a contract between plaintiff and defendant, there could not be a breach.

It is therefore ordered, adjudged, and decreed that the judgment of the lower court be affirmed, with costs.