232 So.2d 791 (1970)
Elmer Emile WENDEL
v.
DIXON REAL ESTATE COMPANY, Inc.
No. 3845.
Court of Appeal of Louisiana, Fourth Circuit.
March 9, 1970.
Rehearing Denied April 6, 1970.
*793 Andry & Andry, Allain C. Andry, III, New Orleans, for plaintiff-appellant.
Meunier, Martin & Meunier, Richard J. Meunier, New Orleans, for Dixon Real Estate Co., Inc.
Carr & Kollin, Patrick E. Carr, Metairie, for Sterling W. Comeaux, Jr.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
BARNETTE, Judge.
This is a suit on a purchase and sell agreement. The plaintiff, Elmer Emile Wendel, brought suit for return of the deposit. He named as defendants: the realtor, Dixon Real Estate Company, Inc. (Dixon), with whom the deposit was made; its surety, Western Surety Company, Inc.; and Sterling W. Comeaux, Jr. (Comeaux). Comeaux, the purported owner, listed the property with Dixon for sale as owner, but he was only a coowner in indivision with three other persons. Wendel therefore joined as defendants herein Mrs. Corinne Routier Comeaux (wife of Sterling W. Comeaux, Jr.), Arthur Blanco and his wife, Mary Zibilich, who were the other alleged coowners of the property in question. The amount of the deposit was $5,100, being 10 percent of the purchase price offered. The realtor's fee was $3,000.
The defendant Sterling W. Comeaux, Jr., answered and by way of reconvention seeks forfeiture of the $5,100 deposited and additionally the recovery of a like amount as penalty under the terms of the alleged contract, subject to payment of the $3,000 realtor's fee out of the deposit, or a net recovery from the plaintiff, Wendel, made defendant in reconvention, in the sum of $7,200.
The defendant Dixon Real Estate Company, Inc., answered asserting its right to the $3,000 commission which it had deducted from the deposit. In reconvention, Dixon seeks recovery from Wendel of an additional amount as attorney's fees on account of its having to employ counsel to defend its entitlement to the $3,000 commission.
Western Surety Company, Inc., answered denying liability and the defendants Arthur Blanco and wife, Mary Zibilich, filed exceptions of no right or cause of action. The defendant Mrs. Corinne Routier Comeaux filed no pleadings and made no appearance in the case as far as we can determine from the record.
The exceptions on behalf of Arthur Blanco and wife, Mary Zibilich, were maintained and plaintiff's suit was dismissed as to them. No appeal was taken from that judgment.
*794 After trial, judgment was rendered in favor of the defendants Comeaux, Dixon and Western Surety rejecting plaintiff's demands and dismissing his suit. The judgment makes no mention of the defendant Corinne Routier, wife of Comeaux, and hence we will consider plaintiff's demands against her as rejected also. Soniat v. Whitmer, 141 La. 235, 74 So. 916 (1917); LaHitte v. Acme Refrigeration Supplies, Inc., 192 So.2d 172 (La.App. 4th Cir. 1966); Mexic Bros., Inc. v. Sauviac, 191 So.2d 873 (La.App. 4th Cir. 1966). Further, the judgment, as finally entered after correction, is in favor of Comeaux, plaintiff in reconvention, and against Wendel in the sum of $5,100 (being in effect a forfeiture of the deposit) with recognition of the claim of $3,000 thereof in favor of Dixon as commission. There was judgment also in favor of Dixon, plaintiff in reconvention, against Wendel in the sum of $500 as attorney's fees.
From this judgment the plaintiff Wendel (also as defendant in reconvention) appealed suspensively. The appeal was answered in this court by "Mary Zibilich wife of, and Arthur Blanco, Corinne Routier wife of, and Sterling W. Comeaux, Jr." praying for affirmance of the judgment maintaining the exception of no cause of action on behalf of Arthur and Mary Zibilich Blanco. Since that judgment was not appealed these parties are not before this court. On behalf of Comeaux the answer to the appeal seeks an increase of $5,100 in the judgment in his favor. We assume the answer on behalf of Mrs. Comeaux was inadvertent.
Dixon also answered the appeal in this court seeking an increase of the judgment in its favor for attorney's fees from $500 to $850.
On October 17, 1967, Comeaux signed as "owner" a listing agreement with Dixon, by which he authorized the sale of certain lots in a subdivision of Jefferson Parish for $48,000 cash to owner and specified "Dixon's commission, all above $48,000.00." On October 26, 1967, Wendel (on a Dixon Real Estate Company, Inc., printed form) made an offer to purchase the property for $51,000 cash and specified "This offer remains binding and irrevocable through 10-27-67." Wendel deposited with Dixon the sum of $5,100, being 10 percent of the proposed purchase price in accordance with the terms of the agreement. Acceptance of the offer is signed only by Sterling W. Comeaux, Jr. The acceptance is not dated, but by stipulation it is admitted that it was signed before the expiration of the offer, October 27, 1967. The agreement contained also the following pertinent provisions:
"In the event the purchaser fails to comply with this agreement within the time specified, the seller shall have the right to demand the deposit plus an equal amount as penalty less the agents commission, forfeited, ipso facto, without formality beyond tender of title to purchaser; or, the seller may demand specific performance.
"In the event the seller does not comply with this agreement within the time specifed, the purchaser shall have the right to either demand the return of the amount of his deposit from the seller in full plus an equal amount to be paid as penalty by the seller; or, the purchaser may demand specific performance at his option."
To clarify our discussion below, it should be noted at this point that the foregoing imposes upon the purchaser, Wendel, in the event of his default a forfeiture of $5,100 plus an additional $5,100 as penalty, a total of $10,200, or specific performance at the seller's option. On the other hand, it imposes upon the seller, Comeaux, in the event of his default the return of the deposit (which was the purchaser's money) and the payment of $5,100 as penalty or specific performance at the purchaser's option. This alleged inequity forms the basis of Wendel's principal contention. He contends that the reciprocal optional obligations *795 of specific performance are lacking in mutuality in that, in the event of Comeaux's default or his inability to persuade his coowners, who were under no contractual obligation to do so, to join in the sale, his option to demand specific performance would have been meaningless. There are also other issues which will be discussed in proper order as necessary.
There is no material factual dispute. All essential facts are stipulated and are as follows:
The property in question was purchased in 1964 by Mary Zibilich Blanco, wife of and Arthur Blanco and Corinne Routier, wife of and Sterling W. Comeaux, Jr. The authority to sell and listing agreement with Dixon was signed only by Sterling W. Comeaux, Jr. There is nothing in the instrument to indicate that he is only a part owner, or that he was acting in an agency capacity for his coowners. There is nothing in the record indicating that Dixon was not in good faith in assuming that Comeaux was the owner. As stated above, the offer to purchase was accepted by Comeaux only. There was no act in writing by Comeaux's coowners to show their acceptance of the purchase offer nor any act purporting to authorize Comeaux to represent his coowners. His coowners are under no contractual obligation either to him or to Wendel.
The act of sale was to have been passed before Wendel's notary at the office of his attorneys, Andry and Andry, on or before January 5, 1968. Prior to that date Wendel's attorneys learned of the title ownership and this was communicated to Wendel. Wendel very frankly stated that he had been advised that the property might not be worth the amount offered and that he was looking for a legal way out of his obligation to purchase. He said he did not think the acceptance of his offer to purchase had been signed by all the owners of the property or that Comeaux had legal authority to act for his coowners. He stated he intended to make an issue of that fact but did not want to reveal that intention until the day of the sale for fear that the owners would sign the acceptance or do something to defeat his purpose. Wendel was very frank to admit that he was looking for any legal basis he could find to avoid the contract.
On January 4, 1968, the day appointed for the passing of title, Wendel appeared at the office of the notary public and was met thereby Comeaux, Arthur Blanco, and Fred D. Korner (representing Dixon). Neither Mrs. Comeaux nor Mrs. Blanco was present, but it is stipulated that they were available and ready to sign the act of sale. Wendel then examined the purchase agreement which had been held in possession of Korner and his belief was confirmed that the acceptance had not been signed by anyone except Comeaux. He then made known his intention not to complete the purchase for the reason that his offer had not been accepted timely by the owners and there was therefore no binding contract to purchase or sell. It was stipulated that Wendel was prepared to make the payment and accept title if he had elected to do so.
The realtor, Dixon, represented by Korner, presented a cashier's check payable to Comeaux and Blanco for $2,150,[1] being the balance of the deposit after deducting the realtor's commission of $3,000. The check was turned over to Wendel's attorney, Andry, and at the time of trial below was still in his possession and uncashed.
It was stipulated and agreed at the conclusion of the trial below that if the court found Dixon entitled to recovery of attorney's fees, the fee would be $500. Further a like amount was stipulated for attorney's fee for Wendel or Comeaux if either should be entitled to recovery of attorney's fee.
*796 We must determine first if there was a binding contract to purchase and sell.
LSA-C.C. art. 2462 provides:
"A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the right to enforce specific performance of same.
"One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agreement to sell, evidenced by such promise and acceptance, may be specifically enforced by either party."
As stated above, Wendel's purchase offer was subject to acceptance by October 27, 1967. Only one of the four coowners of the property timely accepted the offer. It is true that the other three were ready and willing to execute the act of sale on the day appointed but they were never obligated by any agreement in writing either to the purchaser, Wendel, or their coowner, Comeaux. Had they been unwilling to sell on the terms offered, Wendel would have had no cause of action against them for the stipulated penalty or to compel specific performance as provided by the foregoing article and by the terms of the purchase offer; but he would have had recourse against Comeaux under the penalty provision of the contract or for damages in lieu of specific performance. LSA-C.C. arts. 1926 and 1927.
From the fact that Comeaux's coowners were present, ready and willing to pass the act of sale and receive their respective portions of the purchase price, it is conclusively evident that they had an understanding or verbal agreement with Comeaux to complete the act of sale for which Comeaux was personally obligated. Wendel contends therefore that they were in a position to share in all the benefits of the contract without exposing themselves to any of its obligations or contingent liabilities. From this fact he strenuously argues the absence of mutuality and the inequity of the contract. Wendel should not be concerned with Comeaux's obligation to his coowners or vice versa. The question is whether the contract to sell as between Wendel and Comeaux contained a "* * reciprocal consent of both parties as to the thing, the price and terms * * * as to give to either party the right to enforce specific performance of the same." LSA-C.C. art. 2462, supra. The question must be answered in the affirmative. Since it related to real property and was in writing, the requirements of article 2462 were met and upon the timely acceptance by Comeaux it became a reciprocally enforceable contract or agreement to sell as provided in the second paragraph of article 2462.
The defendant Comeaux relies on the well-recognized principle of law that one may lawfully contract to sell property which he does not own and that his agreement to do so does not warrant the assumption that the contract cannot be complied with. The seller promisor may have some private agreement with the owner or anticipate the timely acquisition of the property. In the event he defaults he may be held to the penalty provision of the contract or at the purchaser's option for damages if he cannot specifically perform. Richardson v. Charles Kirsch & Co., 189 So. 146 (La.App.Orleans 1939); Bussey v. Wise-Miller, 172 La. 198, 133 So. 443 (1931); Codifer v. Holdsworth, 7 La.App. 395. We therefore hold that the contract between Wendel and Comeaux was not invalid by reason of the failure of Comeaux's coowners to accept the purchase offer in writing on or before October 27, 1967.
The correctness of this conclusion becomes more apparent when we consider *797 whether Comeaux could have escaped liability in the event of his default. He could not have avoided the contract because his coowners had not joined him in signing the acceptance. This was squarely held in Codifer v. Holdsworth, supra. If it was binding as to Comeaux, it was equally binding as to Wendel. See also Williams v. Terese, 120 So.2d 80 (La.App.Orleans 1960).
Wendel contends that the penalty provisions of this contract, namely, his contingent penal liability of $10,200 as opposed to Comeaux's continguent penal liability of $5,100 are manifestly inequitable and should not be strictly enforced. The trial judge so held and said in his "Reasons for Judgment":
"While parties are free to contract as they see fit, the Court feels that the above penalty provision is both unreasonable and inequitable and accordingly will not enforce the penalty provision over and above the forfeiture of the deposit. Additionally, by terms of the agreement, the party breaching said contract is responsible for the agent's commission, in this case $3,000.00. Since this commission has already been received by Dixon Real Estate Company, by deduction from the original deposit, defendant is entitled to recover this amount."
We cannot concur in this conclusion. In the first place we know of no reason why parties may not contract for unequal contingent penalties for breach of the contract. The contract on this point is clear and specific and not contrary to good morals or public policy, nor does it lead to absurd consequences. It is the law between the parties and must be given that effect. LSA-C.C. art. 1945. In the second place there is not such inequity as the foregoing statements might appear to imply. The penalty provisions of the contract are an either/or condition. In event of Wendel's default, Comeaux can elect to demand the forefeiture and penalty ($10,200) or, at his option, specific performance. In the event he should elect to exercise the latter option, there would be no damages and no penalty, but merely a performance of the contract. On the other hand, in event of Comeaux's default, Wendel could have elected to demand the penalty of $5,100 or demand specific performance, in which event there would be no penalty and no damage if Comeaux could perform. However, if Comeaux could not have specifically performed because of the refusal of his coowners to sell, Wendel could have elected either to demand the contractual penalty ($5,100) or damages for failure of specific performance in which event he would not have been limited to any fixed sum. It is not difficult to speculate on circumstances from which damages could conceivably have exceeded $10,200.
The only other point on which Wendel seeks avoidance of the contract is that his offer to purchase was altered in material substance before acceptance by Comeaux. This he contends amounted to a counter offer by Comeaux which he never accepted, citing Fontenot v. Huguet, 230 La. 483, 89 So.2d 45 (1956); Elmer v. Hart, 121 La. 537, 46 So. 619 (1908); Bethel v. Hawkins, 21 La.Ann. 620 (1869); Morere v. Dixon Real Estate Co., 188 So.2d 623 (La.App. 4th Cir. 1966); Kuhn v. Stan A. Plauche Real Estate Co., 178 So.2d 296 (La.App. 4th Cir. 1965, reversed on other grounds, 249 La. 85, 185 So.2d 210); Bennett v. Treadaway, 134 So.2d 668 (La.App. 4th Cir. 1961).
The principles of law which these cases enunciate are well established in our jurisprudence, but apply only where there has been an alteration affecting the substance of the contract.
The basis of Wendel's contention in this respect is that the purchase offer contained a stipulation for realtor's commission of $3,500 to be paid by the "seller." Before accepting the offer Comeaux had Korner, Dixon's representative, to change this figure to $3,000. This was done by a physical *798 alteration and was initialed "F. D. K." Korner also inserted the following words in line 12: "Deposit to be escrowed NBC Bank, Jefferson, Wilshire Off." initialed "F. D. K." and dated "Oct. 26, 1967 F. D. K."
We fail to see wherein the alterations affected the substance of Wendel's offer to purchase or constituted a counter offer requiring his acceptance. The obligation for payment of the realtor's commission was that of the "seller," and to the extent that the contract contained a stipulation in this regard, it was a matter for agreement between Dixon and Comeaux. Incidentally, the amount of the commission was reduced; therefore, if by some interpretation or contingency it should become Wendel's obligation, he could hardly be heard to complain of its reduction.
The agreement as signed by Wendel specified: "If this offer is accepted by vendor, purchaser agrees to deposit with Dixon Real Estate Company, Inc. immediately in cash 10% of purchase price or $5,100." The depository or account in which Dixon kept the deposit was not so much the concern of Wendel as it was of Comeaux. It was he who required it be deposited in escrow, probably for his own security, but incidentally the security was likewise to the benefit of Wendel. We therefore hold that the "alterations" of which Wendel complained were not of substance and did not render the contract unenforceable.
Wendel has questioned the legal right of Dixon Real Estate Company, Inc., to be paid a commission for the alleged reason that it was not at the time appointed for passing of deed (January 4, 1968) a licensed real estate agency. It was stipulated that in November, 1967, Dixon's license was recalled or suspended and was not reinstated until after January 4, 1968. This had no bearing whatever on its legal capacity as a real estate agency on October 26 and 27, 1967. Significantly the contract provides: "All commissions [referring to the stipulated $3,000 commission] are earned and due immediately from the seller when both parties sign the agreement." Wendel's objection to Dixon's entitlement to commission is therefore without merit.
With reference to the matter of attorney's fee claimed by Dixon, the contract provides as follows:
"Either party hereto who fails to comply with the terms of this offer, if accepted, is obligated and agrees to pay the agents commission and all fees and cost incurred in enforcing collection and damages. * * *"
The foregoing reference to "fees and cost" incurred in enforcing collection can only mean attorney's fees. This fee was stipulated at $500 and judgment was entered accordingly. Dixon seeks by answer to the appeal to have this amount increased to $850 for having to defend its position on appeal. We find the stipulated fee of $500 to be reasonable and no increase will be granted. There is nothing in the record to indicate that the trial judge did not take into consideration the probability of an appeal.
A reading of the above-quoted stipulation relative to the payment of "* * the agents commission and all fees and costs * * *," if taken out of context, might be interpreted so as to place the obligation for payment of the agent's commission as well as attorney's fees on Wendel, the party who defaulted. But this implication is contradicted by the penalty clause which specifically provides the penalty of the defaulting purchaser (Wendel) to be "less the agents commission." Therefore the agent's commission but not the attorney's fee is payable out of the deposit and the penalty assessed against Wendel. As a matter of fact, Dixon has already received its commission by withholding it from the deposit as above stated. The practical result is that it will have been paid, as intended by the contract, by the seller Comeaux, who is entitled to forfeiture *799 of the deposit plus a like amount as penalty, subject to his payment of Dixon's commission.
In his petition in reconvention, in addition to forfeiture of the deposit and recovery of the stipulated penalty, Comeaux seeks recovery of attorney's fees. The judgment appealed granted recovery to Comeaux, plaintiff in reconvention, forfeiture of the deposit subject to payment of the agent's commission, without express mention of the attorney's fees, which therefore stands denied. Comeaux, plaintiff in reconvention, did not appeal, but, as stated above, answered Wendel's appeal in this court. The answer to the appeal specifically seeks only an increase of $5,100 in his judgment against Wendel and concludes with the prayer "and in all other respects that it [the judgment appealed] be affirmed." The denial of his claim for attorney's fees is not therefore an issue on appeal and the judgment of the district court in that respect is final.
For the reasons assigned the judgment in favor of the defendants Sterling Comeaux, Jr., Dixon Real Estate Company, Inc., and Western Surety Company and against the plaintiff, Elmer Emile Wendel, rejecting plaintiff's demands and dismissing his suit is affirmed.
The judgment in favor of Sterling W. Comeaux, Jr., plaintiff in reconvention, and against Elmer Emile Wendel, defendant in reconvention, is amended and recast in favor of Sterling W. Comeaux, Jr., decreeing and ordering the forfeiture of the deposit of $5,150, less $50, and further that there be judgment in favor of Sterling W. Comeaux, Jr., and against Elmer Emile Wendel in the additional sum of $5,100 as penalty, with legal interest from date of judicial demand, subject to payment by Sterling W. Comeaux, Jr., to Dixon Real Estate Company, Inc., the sum of $3,000 as realtor's commission.
The judgment in favor of Dixon Real Estate Company, Inc., plaintiff in reconvention, against Elmer Emile Wendel, defendant in reconvention, is amended and recast in favor of Dixon Real Estate Company, Inc., and against Elmer Emile Wendel in the sum of $500 as attorney's fees with interest from date of judicial demand.
As thus amended and to this extent only, the judgment is affirmed. In all other respects the judgment is annulled.
The plaintiff-appellant is cast for all costs.
Amended and affirmed and annulled in part.
NOTES
[1] The purchase agreement provided for and acknowledged a deposit of $5,100. Actually $5,150 had been deposited previously in connection with a prior negotiation which was never consummated and by agreement was left on deposit for the recited $5,100.