316 So.2d 890 (1975)
CARL HECK ENGINEERS, INC.
v.
HASELDEN & ASSOCIATES, INC., now Warren Engineers and Construction Co., Inc.
No. 10365.
Court of Appeal of Louisiana, First Circuit.
July 8, 1975.
Rehearing Denied August 26, 1975.
Writ Refused October 24, 1975.
*891 Stanwood R. Duval, Jr., Houma, for appellant.
Donald L. Peltier, Thibodaux, for appellee.
Before LANDRY, BLANCHE and YELVERTON, JJ.
LANDRY, Judge.
Plaintiff, (Engineer), appeals from a judgment dismissing Engineer's claim against defendant (Contractor) for liquidated damages as provided for Engineer's benefit by virtue of a stipulation pour autrui contained in a subdivision development contract between Contractor and Elmo Authement, (Owner). The trial court rejected Engineer's demands upon finding that the stipulation pour autrui relied upon by Engineer is penal in nature and, as such, invalid and unenforceable as a matter of law. We reverse and remand for trial on the merits.
On November 28, 1969, Owner and Contractor entered into a detailed written contract in which Contractor undertook to construct for Owner a sanitary sewer system for a subdivision known as Addendum No. 1 to Acadia Woods. The agreement (which refers to Contractor as Party of the First Part) expressly designates Engineer as the Engineer in charge of the project. It also provides that the work shall commence within 10 days of a written work order issued by Owner and be completed within 100 consecutive calendar days of commencement. Time is expressly stated to be of the essence of the agreement. Owner reserves the right to make changes and modifications mutually agreed upon with Contractor in writing and approved by Engineer. Should agreed changes increase or decrease the amount of the work or time required, the written agreement for the change is declared to be the evidence of the change. Any adjustment desired by Contractor in connection with a change must be asserted within 10 days from date the change is ordered unless the time is extended by Owner. The contract specifications admonish Contractor to examine the construction site carefully and places on Contractor responsibility for conditions found at the work site. Engineer is given full charge of the work, his opinion being made final as to all disputes concerning the amount and character of work performed. Engineer is further given authority to make changes which are adjustable on the basis of additional or decreased work involved.
The contract and attached "Instructions to Bidders" pertinently provide:
"6. It is mutually agreed between the parties hereto that time is the essence of this contract, and in event the construction of the work is not completed within the time specified, it is agreed that from the compensation otherwise to be paid to the Contractor, the second party may retain the sum of Fifty Dollars ($50.00) per day for each day thereafter, Sundays and holidays included, that the work remains incompleted, which sum shall represent the actual damage which the Owner will have sustained per day by failure of the Contractor to complete the work within the time stipulated; and this sum is not a penalty, being the stipulated damage the second party will have sustained in event of such default by the first party. The Contractor shall also pay the Engineer the sum of Fifty Dollars ($50.00) per day as hereinbefore stipulated, for actual additional expense incurred by reason of such delay."
*892 "14. CHANGES IN PLANS AND SPECIFICATIONS:
The Owner reserves the right to make such changes or modifications as it deems advisable * * *. Changes made after the execution of the Contract will be paid for at a price mutually agreed upon in writing by the Owner and the Contractor and approved by the Engineers prior to the performance of said work. * * * if the changes made cause an increase or decrease in the amount due under the Contract, or in the time required for its completion, the aforementioned written agreement shall be evidence of such changes. Any claim for adjustment under this paragraph must be asserted within ten (10) days from the date such change is ordered, unless the Owner shall extend such time, and nothing provided in this paragraph shall excuse the Contractor from proceeding with the prosecution of the work so changed. * * *"
"19. DETERMINATION AND EXTENSION OF CONTRACT TIME:
The time within which the work is to be completed is of the essence of the contract.
The Contract Time shall consist of the calendar days elapsed during the period beginning ten (10) days after the date of the official written order of the Owner to begin work and ending with the Engineer's acceptance of the Work.
At any time before the payment of the Final Estimate, the Contractor may submit to the Engineer an application for the extension of the Contract time. In support of the application the Contractor shall allege delay in the performance of the work only by either or both of the following causes:
(a) An Act of State.
(b) `Fortuitous Events' or `events beyond the control of' as defined in Louisiana Jurisprudence.
In the event of the Contractor's failure to complete the work within the time specified, except as provided above, he shall pay the Owner for liquidated damages an amount, which due to the difficulty of estimating such damages with exactness is hereby affixed, determined and agreed upon, of Fifty ($50.00) Dollars per calendar day for each and every day he is in default of completion. The money will be deducted by the Owner from monies that are due or will be due the Contractor under the Contract terms.
In addition to the above, the Owner will deduct from the monies due or to become due the Contractor under the Contract terms and will pay the Engineers by reason of this delay in completion of the work a sum which in view of the difficulty in estimating with exactness, is hereby affixed, determined and agreed to be Fifty ($50.00) Dollars per calendar day.
If they so chose, either the Owner or the Engineers may agree to waive its or their rights under the above mentioned conditions, but it is understood and agreed upon by the Contractor that this action on the part of either the Owner or the Engineers will not cancel the rights of the other to impose and collect damages in accordance with the above schedule.
"20. DUTIES OF THE CONTRACTOR:
The Contractor shall give the work his constant attention to facilitate the progress thereof and shall cooperate with the Engineer in every way possible.
* * * * * *
He (Contractor) shall bear all losses resulting to him on account of the *893 amount or character of the work, or on account of the nature of the land in or on which the work is done being different from what was estimated or expected, or on account of the weather, climate, elements or other causes."
* * * * * *
"28. DEFAULT OF CONTRACT:
* * * * * *
Permitting the Contractor to continue the Work after the time for its completion has expired or after the date for which the contract time may have been extended shall in no way be considered as a waiver of the Owner's rights under the terms of this Contract.
No order, measurement or certificate by the Owner or the Engineers, payment of any kind, acceptance of work, possession of equipment or materials, or any power reserved by the Owner, or any right to any damage provided shall relieve the Contractor from his responsibility under this Contract. Any waiver of any one part of this Contract will in no way be considered as a waiver of any part of this Contract."
Also attached to the contract is a set of General Conditions which states:
"4. ACCEPTANCE AND FINAL PAYMENT:
Upon completion and acceptance of the work, the Engineer shall execute a certificate that the whole work provided for in this Contract has been completed and accepted under the terms and conditions of this Contract * * *. The entire balance found to be due the Contractor * * * shall be paid to the Contractor after the Owner has satisfied himself that the quantities shown on the Final Estimate are Correct * * *.
It is expressly stipulated and understood that payment of the Final Estimate shall not operate to release the Contractor and his sureties from liability * * * for any and all claims for damages, loss or injury sustained by any person whomsoever, through the fault, negligence, or conduct of the said Contractor or his employees."
Section 7 of an annexed contract document designated "General Specifications", provides that after final construction inspection by Engineers, which discloses the work to have been satisfactorily performed, Engineer will issue a Certificate of Acceptance "as hereinbefore specified".
An official work order was issued Contractor under date of December 16, 1969. The 100 consecutive calendar day completion period commenced December 26, 1969, and terminated April 4, 1970. On May 4, 1973, Engineer certified to Owner that the work was completed substantially in accord with the contract terms and specifications.
In effect Contractor maintains the delays were due mainly to adverse weather conditions and delay in providing electrical power to the subdivision for operation of pumps required by the sewerage disposal system. Incidentally, Contractor urges that some delays were caused by faulty bench marks established by Engineer for laying the sewer lines and by a change order which increased the size of the oxidation pond constituting part of the sewer system.
Engineer's position is that the contract requires Contractor to make all applications for extensions in writing, and no other form of extension is possible. Engineer also contends that the contract itself provides the only grounds for extensions which are exclusive. It is conceded that written applications for extensions were made by Contractor on October 12, 1970, October 16, 1970, October 26, 1970, November 4, 1970, November 10, 1970, and January 6, 1971, for a total of 30 exempt *894 days, which were granted by Engineer. It is also agreed that no other applications for extensions of time were directed to Engineer by Contractor. Engineer claims damages at $50.00 daily for 1,095 unexempt delay days, or the sum of $54,750.00.
Contractor maintains, however, that verbal requests for extensions were made to and granted by Owner. In essence, Owner testified that he personally made no claim for damages because he felt all delays were justified due to weather conditions over which Contractor had no control. Owner did not testify concerning any verbal requests for extensions made to him by Contractor. However, the clear import of Owner's testimony is that he acquiesced in the delays because he deemed their cause to be an act of God, namely, adverse weather.
Engineer contends the contract is the law between the parties; that no action of Owner can prejudice Engineer's rights under the agreement, and that Owner has no authority to grant or acquiesce in extensions to Engineer's prejudice.
Contrarily, Contractor urges that Engineer has no rights pursuant to the contract inasmuch as Engineer is not a party thereto. We agree that Engineer is not privy to the contract in the sense of being a signatory thereto. Nevertheless, we find that Engineer is a third party beneficiary pursuant to a stipulation pour autrui in favor of Engineer. It is elementary that for one to be the beneficiary of a stipulation pour autrui, he must not be a party to the contract which stipulates in his behalf.
In effect the trial court dismissed Engineer's action on an exception of no cause of action. The lower court found that Engineer was a third party beneficiary pursuant to a stipulation pour autrui, but held the stipulation invalid as a matter of law because it is based on a penal obligation. In so holding, the lower court relied solely upon The New Orleans St. Joseph Association v. A. Magnier, 16 La.Ann. 338 (1861), and held the obligation unenforceable. Supplementing this finding, the trial court observed that assuming the obligation to be valid, Contractor had established a defense by showing acquiescence, and permitted extensions granted by Owner.
We reverse the trial court's ruling that a stipulation pour autrui based on a penal obligation is invalid and unenforceable. We also find the record insufficient to support the trial court's incidental finding that extensions granted by Owner and/or acquiescence by Engineer account for all delays in project completion. More particularly, we find that the present record does not permit a calculation of the number of days delay with which Contractor may properly be charged in order to determine the liquidated damages, if any, due Engineer by Contractor.
The stipulation pour autrui, as known to our law, is provided by LSA-C.C. arts. 1890 and 1902, which state:
"Art. 1890:
A person may also, in his own name, make some advantage for a third person the condition or consideration of a commutative contract, or onerous donation; and if such third person consents to avail himself of the advantage stipulated in his favor, the contract can not be revoked."
"Art. 1902:
But a contract, in which anything is stipulated for the benefit of a third person, who has signified his assent to accept it, can not be revoked as to the advantage stipulated in his favor without his consent."
St. Joseph Association, above, relied upon by the trial court, involved a dispute between the Association and one of its member hatters, Magneir. The members, Magnier included, agreed to close their respective establishments on Sunday. The *895 agreement provided that any member who violated the compact by opening his establishment on Sunday would become subject to a fine of $100.00 payable to the St. Joseph's orphanage. Defendant Magnier opened his shop on Sunday, and the orphanage filed suit to collect the amount stipulated in its favor. In dismissing the Association's action, the court noted:
"The text is clear that the advantage must be the condition or consideration of the contract: Hence it is that a penal obligation cannot be stipulated for the benefit of third persons. 6 Toullier, No. 846; Rolland de Villargues, 2 Dict. No. No. 50; C.N. 1121.
A penal clause, being a secondary obligation having for its object the enforcement of a primary obligation, cannot be assimilated to a condition or consideration. C.C. 2113 (now Art. 2117).
The penal obligation, says C.C. 2115 (now Art. 2119), has this in common with a conditional obligation, that the penalty is due only on condition that the first part of the contract be not performed. But it differs from it in this, that in penal contracts there must always be a principal obligation, independent of the penalty; while in conditional contracts, there is no obligation unless the condition happens."
We understand the rationale of St. Joseph Association, above, to be that a stipulation pour autrui in the form of a penal obligation in favor of the third party may not be made the primary consideration of a contract. Our research discloses that St. Joseph Association, above, has never been cited as legal authority since its rendition over 100 years ago. We also note that in a most comprehensive article on the stipulation pour autrui, published in 11 Tul.L. Rev. 18 (1936), Professor J. Denson Smith, at pages 48 and 49, criticizes both the holding and rationale of St. Joseph Association, above. Professor Smith notes that the Court was obviously influenced by the codal differentiation between conditional and penal obligations and erred in misapplying these principles to the rules governing the stipulation pour autrui. Professor Smith concludes that in St. Joseph Association, above, recovery should have been permitted. We find Professor Smith's observations and conclusions to be well founded, particularly in the light of Article 1890, above, which expressly states a person may, in his own name, make some advantage for a third person THE CONDITION OR CONSIDERATION (Emphasis supplied) of a commutative contract.
Our understanding of Articles 1890 and 1902, above, is that the nature or classification of the obligation stipulated in favor of a third party does not vitiate the stipulation. Rather, the articles require that validity demands only that the obligation stipulated in favor of the third person be either a condition upon which the agreement between the parties depends, or a consideration of the agreement between the contracting parties.
Applying these principles to the case at hand, our inquiry becomes whether the stipulation in favor of Engineer is either a condition or consideration of the agreement between Contractor and Owner. We conclude the liquidated damages stipulated in favor of Engineer is part of the consideration of the agreement between Owner and Contractor. The stipulation is clearly a secondary obligation in that it contemplates no advantage in favor of Engineer unless Contractor breaches the primary obligation of failing to complete the project within the allotted time.
We acknowledge that a provision for liquidated damages may be assimilated to a penal provision. Pennington v. Drews, 218 La. 258, 49 So.2d 5 (1951). However, that a provision for liquidated damages is penal in nature does not per se render such an agreement invalid and unenforceable. This is so because the punitive nature of an agreement is not the prime criteria of *896 validity vel non. If a penal clause is the condition of or consideration for an agreement, it is not thereby rendered ipso facto invalid.
In the instant case, we note there were certain contractual relationships between Owner and Engineer. Owner engaged Engineer to design and supervise construction of an entire subdivision, including streets which were to be constructed by someone other than Contractor. It is shown that the compensation agreed to be paid Engineer by Owner included remuneration for both design and supervision of construction. It further appears that Engineer's compensation was for a fixed percentage of the construction cost, which figure was directly proportional to the number of days Engineer estimated its supervision would be provided. As Engineer explained, each day of supervision required beyond the contracted completion date produced expense to Engineer for which no compensation was paid to Engineer by Owner. As Engineer also pointed out, delay in completion of the sewerage work delayed other aspects of the overall subdivision project, particularly street construction which could not be commenced until the sewer lines were laid and tested. On these considerations, it is understandable that Owner would make part of the consideration of his agreement with Contractor a provision whereby Contractor agreed to pay Engineer a sum, which due to difficulty of exact measure and assessment, was stipulated at a fixed daily rate for each days delay in completion of the work resulting from Contractor's failure to diligently pursue the project. By this provision, Owner provided, as part of the consideration for granting Contractor the work, that Contractor would, under the circumstances agreed, compensate Engineer for the extra services involved.
Recent jurisprudence has sanctioned stipulations of penalties, as secondary or conditional obligations, in favor of third persons not parties to agreements providing same. We refer to Wendel v. Dixon Real Estate Company, Inc., 232 So.2d 791 (1970), wherein an agreement to buy and sell real property included a stipulation in favor of the real estate agent who brought purchaser and seller together. In the cited case, Comeaux, a co-owner, listed the property with defendant realtor, Dixon, who obtained an offer to purchase from plaintiff, Wendel. The offer, on a Dixon Real Estate Company, Inc. form, was accepted by Comeaux. In conformity with the offer, Wendel deposited the sum of $5,100.00 with Dixon. The offer provided that should purchaser fail to complete the sale within the specified time, seller could demand the deposit, plus and equal amount as penalty minus the agent's commission. In addition, the agreement provided that the agent's commission was earned and payable upon signing of the instrument by both purchaser and seller. The agreement also stipulated that either party who failed to comply is "obligated to pay the agent's commission and all fees and costs incurred in enforcing collection and damages."
Wendel defaulted and entered suit against all owners and Dixon for the return of the deposit. Comeaux reconvened for the stated penalty together with attorney's fees. Dixon reconvened claiming its commission and attorney's fees incident to defense of its entitlement thereof. The trial court declared forfeiture of purchaser's deposit, but denied Comeaux recovery of the penalty sought. The Court also recognized Dixon's entitlement to the commission retained from the deposit and awarded Dixon $500.00 attorney's fees the amount stipulated to be due should the Court find Dixon entitled to attorney's fees). The Court of Appeal, Fourth Circuit, reversed the judgment denying Comeaux the penalty, and rendered judgment in favor of Comeaux for the penalty plus the balance of the deposit after deduction of Dixon's commission. The Court also affirmed Dixon's recovery of his commission and attorney's fees noting that the contractual reference to "fees and costs" incurred in *897 collecting the agent's commission, included attorney's fees. The court also concluded the language of the agreement indicated an intention to the effect that in the event of purchaser's default, seller would receive the deposit, less agent's commission, plus the amount of the deposit as a penalty, and that attorney's fees due the realtor be assessed directly against purchaser, and not be deducted from the sum of the forfeited deposit and penalty.
We find that Wendel, above properly held that a penal obligation in favor of a third person may be provided for by a stipulation pour autrui. In Wendel, the provision granting realtor, Dixon, "all fees and costs" incurred in enforcing collection of the agent's fee, is unquestionably penal and secondary in nature. It was not the prime object or consideration of the agreement to purchase. The same is true of the provision for payment of the agent's commission out of the forfeited deposit. Nevertheless, the obligation thus imposed and assumed was plainly part of the consideration of the contract between Comeaux and Wendel. Under the terms of the agreement, the agent's commission was deemed earned when the agreement was signed by both parties. In the absence of the provision for payment of Dixon's fee out of the deposit, Dixon would have been relegated to a claim and possible action against Comeaux for collection of the agent's fee. To avoid this possible eventuality, the contract conferred upon Dixon a direct claim to its commission from the forfeited deposit, in addition to the right to recover costs and attorney's fees should Dixon be compelled to defend its entitlement to or institute legal action against Wendel for collection of the commission. By mutual agreement, Comeaux and Wendel stipulated this advantage in favor of Dixon. By eliciting such an agreement from Wendel, Comeaux protected himself against claim or suit by Dixon. We think it obvious that these stipulations, though penal in nature and conditional in themselves, were part of the consideration of the principal agreement to buy and sell. As such, the stipulations are valid and enforceable.
We are of the view that in St. Joseph Association, above, the court erred in two instances. First, the court subverted the obvious intent of the parties by declaring that the principal obligation was to make a conditional donation to plaintiff orphanage. It appears to us that the prime object of the parties in St. Joseph Association, above, was to provide for Sunday closing of members of the hatter's organization. Secondly, assuming the prime objective in St. Joseph Association, above, was to make a conditional donation to a third party, this would not, according to LSA-C.C. arts. 1890 and 1902, render the agreement invalid. As noted above, Article 1890 provides that an advantage in favor of a third person may be made either the condition or consideration of a commutative contract or onerous donation. The fact that such a stipulation is conditional or penal, or whether it is the primary or secondary purpose of the agreement, is a matter of no moment. If the parties agree to such a stipulation, a binding obligation results.
The judgment of the trial court rejecting Engineer's demands is reversed and set aside, and this matter remanded to the trial court for further proceedings consistent with the views herein expressed. All costs of this appeal to be paid by Contractor.
Reversed and remanded.